738 A.2d 298

**STATE of Maryland**

v.

**Charles Anthony COOKSEY.**

**No. 1707, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 29, 1999.

332

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Leonard Collins, Jr., State's Atty. for Charles County, LaPlata, on the brief), for appellant.

Franklin B. Olmsted, LaPlata, for appellee.

Argued before HOLLANDER, THIEME and PAUL E. ALPERT (Ret'd, Specially Assigned), JJ.

THIEME, Judge.

The appellee, Charles A. Cooksey, was charged in the Circuit Court for Charles County, by way of a four-count indictment, with second degree sexual offense, third degree sexual offense, and two counts of child sexual abuse. Cooksey filed a motion to dismiss the indictment based on lack of specificity and duplicity. After a hearing on the motion, the trial court granted Cooksey's dismissal motion, finding that the counts charged in the indictment, as part of a "continuous course of conduct," were duplicitous. The State noted its appeal, presenting the following issue for our review:

Did the trial court err in granting Cooksey's Motion to Dismiss the indictment on duplicity grounds?

We answer "yes" to this question.

### Facts

On July 6, 1998, the State charged Charles Anthony Cooksey in a four-count indictment. The first two counts of the indictment charged Cooksey with committing second and third degree sexual offenses, respectively, upon Casey C. between July 22, 1991, and July 22, 1992, "in a continuing course of conduct." The third and fourth counts of the indictment charged Cooksey with sexual child abuse of both Casey C. and Holly M. The abuse of Casey C., as alleged in the third count, occurred between July 22, 1991, and July 22, 1992, in a "continuing course of conduct." The fourth count alleged abuse of Holly M. occurring earlier, between June 30, 1984, and August 17, 1987, "in a continuing course of conduct."

Cooksey filed a Demand for Bill of Particulars. For each count he demanded, *inter alia*, "the number of offenses of the kind charged in the count that are included in the alleged course of conduct." The State responded with a Bill of Particulars as follows: As to the second and third degree sexual offenses, the State explained that due to the youthful age of the victim, and her inability to recall more specific

dates, the State was unable to provide more specific dates than the time frame provided in the indictment. The State did specify, however, that the second and third degree sexual offenses occurred at 2301 Ironside Drive in Waldorf, Maryland. The second degree sexual offense was alleged to have consisted of Cooksey's touching the victim's buttocks and genitals with his hand, inserting his finger into the victim's vagina, attempting to penetrate her vagina with his penis, rubbing her hand on his erect penis, and placing her on top of him and moving her up and down, all for the purpose of sexual arousal or gratification. The second degree sexual offense also consisted of acts of cunnilingus when the victim was eight years old that continued for six months to one year, consisted of as many as fifteen incidents, and ended after Cooksey assaulted the victim's mother in July 1992.

As to the third count of the indictment, sexual child abuse of Casey C., the State added that Cooksey was dating the victim's mother during the period of abuse, and was a regular presence in the victim's home. He often helped the victim's mother care for the victim, and the incidents of abuse were alleged to have occurred as many as fifteen times. The incidents of abuse were the same as those discussed above.

With respect to the fourth count of the indictment, sexual child abuse of Holly M., the State again explained that the youthful age of the victim and her inability to recall specific dates precluded the State from being any more specific than its alleged time frame of June 30, 1984, through August 17, 1987. The State supplemented the indictment with information that the abuse occurred in Charles County, Maryland, and began when Cooksey began dating the victim's sister. The abuse continued after he married the victim's sister in June 1984. It continued while Cooksey resided with the victim during 1986 and 1987, during which time Cooksey had care, custody, or responsibility for her supervision. The abuse ended when the victim ran away to Florida on August 17, 1987. The State also set forth that the victim was a minor child who frequently spent the night at Cooksey's residence and that he was responsible for her supervision. Cooksey was

charged with fondling the victim's breasts, placing his mouth on her breasts, rubbing against her, exposing his penis to her, and masturbating in her presence. The State alleged that the sexual child abuse was a continuous course of conduct that occurred between seventy-five and one hundred times during the specified time period.

On October 2, 1998, a hearing was held on Cooksey's Motion to Dismiss the indictment on grounds of lack of specificity and duplicity. After the hearing, the State filed "State's Amendment to Bill of Particulars." In the amendment, the State asked that Parts I, II, and III of the Bill of Particulars be amended to read, "The count charges one offense, which comprises up to fifteen incidents." And the State asked that Part IV of the Bill of Particulars be amended to read, "The count charges one offense, which comprises between seventy-five and one hundred incidents." Cooksey answered with a Memorandum. On October 19, 1998, the trial court issued an Opinion and Order granting, in part, Cooksey's Motion to Dismiss. The court ruled that the indictment was reasonably particular, given the continuing nature of the offenses. The court ruled against the State, however, on the matter of duplicity, finding that the counts of the indictment were duplicitous. The appeal timely followed.

### Discussion

In determining whether the trial court erred in granting the dismissal motion, we are obliged to "accept as true all well-pleaded facts and allegations in the complaint[ ], together with reasonable inferences properly drawn therefrom." *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993). "The appropriate standard of review of the grant or denial of a motion to dismiss is whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts that would support the claim made." *Tafflin v. Levitt,* 92 Md.App. 375, 379, 608 A.2d 817 (1992), *cert. denied,* 328 Md. 447, 614 A.2d 974 (1992) (citing *Flaherty v. Weinberg,* 303 Md. 116, 135–36, 492 A.2d 618 (1985)). *See also Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934

(1985) (a motion to dismiss lies where there is no justiciable controversy).

As the State points out, there are no Maryland cases directly addressing the question of duplicity in an indictment charging sexual offenses committed on a continuous basis over a period of time. We will, then, begin our analysis by reviewing the case law of other jurisdictions dealing precisely with this issue.

The California Court of Appeal was faced with a similar dilemma in *People v. Van Hoek*, 200 Cal.App.3d 811, 246 Cal.Rptr. 352 (1988). Van Hoek, a "resident child molester," [1] appealed from his conviction for molesting his daughter over a ten-year period of time. Specifically, he was convicted of seven counts of lewd and lascivious conduct and one count of unlawful sexual intercourse. The State did not present evidence of any specific act to support the charged offenses, and the child failed to identify in time or place a single specific occasion to which Van Hoek could have presented a defense. The California Court held that the prosecutor's failure in a § 288(a) case [2] to plead and prove a specific instance of molestation violated the defendant's constitutional right to due process of law. The Court reasoned that when the victim's testimony is unspecific as to any particular occasion, and yet involves many acts committed over an extended period of time, it would be impossible for the prosecution to select the specific act relied upon to prove the charge. And, it would be equally impossible for the jury to agree unanimously beyond a reasonable doubt that the defendant committed the same specific act. *Id.* at 356. "Implicit in the cases requiring

---

1. The term "resident child molester" was introduced by the California Court "to apply to a person who either resides in the same home with the minor or has unchecked access to the child and repeatedly sexually molests the child over a prolonged period of time." *Van Hoek*, 246 Cal.Rptr. at 354 n. 1.

2. CA Penal Code § 288(a) proscribes the willful and lewd commission of "any lewd or lascivious act" on or with a child under the age of 14 years, with "intent of arousing, appealing to, or gratifying the lust, passions or sexual desires" of the perpetrator or the child.

specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the twelve jurors must agree on one specific act." *Id.*

In response to that decision, the California legislature enacted Penal Code § 288.5,[3] "Continuous sexual abuse of a child," which became effective January 1, 1990. In its entirety, § 288.5 states:

(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066,[4] or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.

(c) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be

---

**3.** After the legislature enacted § 288.5, the California Court of Appeal disapproved *People v. Van Hoek, supra. See People v. Jones,* 270 Cal.Rptr. 611, 792 P.2d 643 (1990).

**4.** CA Penal Code § 1203.066(b) defines "Substantial sexual conduct" as penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender.

charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim.

By creating a course of conduct offense, the California legislature eliminated the due process and unanimity problems perceived in *Van Hoek*. *See People v. Jones*, 51 Cal.3d 34, 270 Cal.Rptr. 611, 792 P.2d 643 (1990) (generally, jury unanimity as to specific acts not required for course of conduct crimes). As explained by the California legislature,[5] these cases often involve children who can relate multiple acts of molestation, but, due to their tender ages, cannot recall with specificity where, when, or how individual acts of abuse occurred. As a result, the pleadings in these cases generally omit such specifics.

Hence, § 288.5 remedied problems of pleading and proof that often ensue in cases involving child molesters who engage in repeated acts with their victims, while having close and continuing contact with them. The statute prohibits a continuing course of conduct: the repeated sexual abuse of a minor by an adult who has regular access to the minor. To establish a violation of § 288.5, the jury must agree unanimously that during the period alleged in the indictment or information the defendant engaged in a pattern of abuse that included at least three acts of molestation, but it need not

---

5.  Section 288.5 states, in its declaration of purpose:
    "The Legislature finds and declares that because of the court's decision in *People v. Van Hoek* (citation omitted), there is an immediate need for additional statutory protection for the most vulnerable among our children, those of tender years, some of whom are being subjected to continuing sexual abuse by those commonly referred to as 'resident child molesters.' These molesters reside with, or have recurring access to, a child and repeatedly molest the child over a prolonged period of time but the child, because of age or the frequency of the molestations, or both, often is unable to distinguish one incident from another in terms of time, place or other particulars, and as a consequence prosecutors are unable to provide the specificity of charges necessary to overcome the constitutional due process problems raised in the *Van Hoek* case within the framework of existing statutory law. As a consequence, some of our most vulnerable children continue to be at risk and some of our worst offenders continue to go unpunished."

agree on when or where those acts occurred. § 288.5(b); *People v. Whitham,* 38 Cal.App.4th 1282, 45 Cal.Rptr.2d 571 (1995). Moreover, only one violation of § 288.5 can be charged for the continuing sexual abuse of a single victim, and the defendant may not be charged with any other felony sex offenses involving the same victim during the period in which the defendant allegedly violated § 288.5. § 288.5(c).

Similarly, New York's Legislature has also responded to the difficulties in prosecuting cases involving resident child molesters. Effective August 1, 1996, the New York legislature enacted Penal Law §§ 130.75 and 130.80. Section 130.75, "course of sexual conduct against a child in the first degree," in relevant part, states:

> (a) A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration, he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact, with a child less than eleven years old.

Section 130.80, "course of sexual conduct against a child in the second degree," states:

> (a) A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three months in duration, he or she engages in two or more acts of sexual conduct with a child less than eleven years old.

Both §§ 130.75 and 130.80 further explain that a person cannot be prosecuted subsequently for any other sexual offense involving the same child unless the other charge occurred outside the time frame specified under this section.

In *People v. Calloway,* 176 Misc.2d 161, 672 N.Y.S.2d 638 (1998), the New York Supreme Court addressed the issues of jury unanimity, indictment specificity, and state and federal constitutionality as it related to the § 130.75 statute. In that case, the People claimed that for more than three months Calloway engaged in a course of sexual conduct with a female child under the age of eleven years. The Court, quoting

*People v. Shack,* 86 N.Y.2d 529, 634 N.Y.S.2d 660, 658 N.E.2d 706 (1995), stated:

> Whether multiple acts may be charged as a continuing crime is resolved by reference to the language in the penal statute to determine whether the statutory definition of the crime necessarily contemplates a single act. Guidance is also obtained from analysis of whether the Legislature intended to prohibit a course of conduct or only specific, discrete acts.

Id. 672 N.Y.S.2d at 640.

After reviewing the § 130.75 statute, the Court explained that it was evident from the language of the statute that "the legislature intended to create a single crime, *viz.,* the repeated sexual assault of the same child during a specific period of time." *Id.* Because the statute was new, however, there was no New York case law interpreting the issues raised by *Calloway.* The Court thus looked to similar statutes in other states, particularly California's Penal Code § 288.5, *supra.*

The New York Court found the analyses of the California courts to be both applicable and persuasive when considering Calloway's jury unanimity challenge. The New York Court stated:

> California, like New York, requires jury unanimity in criminal cases. California courts, however, recognize two contexts in which jury unanimity as to specific acts comprising a course of conduct crime is not required: (1) "acts ... so closely connected that they form part of one and the same transaction" and (2) "when ... the statute contemplates a continuous course of conduct of a series of acts over a period of time" which apples to Cal.Penal Code § 288.5.

*Id.* at 641 (citations omitted).

The Court further explained that continuous course of conduct crimes do not require jury unanimity on a specific act, because the specific act is not what is criminalized. Rather, it

is the *actus reus* [6] of the crime that requires unanimous assent of the jury. The *actus reus* in this type of crime is usually a series of acts, occurring over a period of time, that result in cumulative injury to the victim. The jury need agree only that the defendant engaged in the criminal course of conduct. *Id.*

With these statutes in mind, we turn now to the case before us, and the law of this State. Maryland has not enacted a course of sexual conduct statute. Rather, Cooksey was charged under statutes that ostensibly proscribe single-act crimes. He argues, then, that he cannot be charged on individual counts for criminal conduct, which the State represents as a continuing course of conduct over a given period of time. Specifically, the first two counts of the indictment against Cooksey charged him with second and third degree sexual offenses, respectively, under Md.Code, Art. 27, § 464A and § 464B. The third and fourth counts of the indictment charged Cooksey with sexual child abuse of Casey C. and Holly M., respectively. We will begin our review of the issues in this case by first discussing the sexual child abuse charges.

Count three and count four of the indictment charged Cooksey with child abuse under Md.Code, (1957, 1996 Repl. Vol., 1998 Supp.), Art. 27, § 35C, which states, in relevant portion:

(a)(1) In this section the following words have the meanings indicated.

(2) "Abuse" means:

(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the

---

**6.** *"Actus reus"* is "a wrongful deed which renders the actor criminally liable if combined with *mens rea;* a guilty mind." *Black's Law Dictionary,* 5th ed., p.34.

child's health or welfare is harmed or threatened thereby; or

(ii) Sexual abuse of a child whether physical injuries are sustained or not.

(3) Child means any individual under the age of 18 years.

(4) Family member means a relative of a child by blood, adoption, or marriage.

(5) Household member means a person who lives with or is a regular presence in a home of a child at the time of the alleged abuse.

(6)(i) Sexual abuse means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member.

(ii) Sexual abuse includes, but is not limited to:

1. Incest, rape, or sexual offense in any degree;

2. Sodomy; and

3. Unnatural or perverted sexual practices.

Cooksey argues that, in the words of the statute that created it, child sexual abuse is a single act crime. We disagree. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423 (1995). Moreover, the starting point for determining legislative intent is the language of the statute itself. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–445, 697 A.2d 455 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424 (1997) (quoting *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468 (1995)).

While undertaking to divine the legislative intent of a statute in *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992), the Court of Appeals stated:

While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of

construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust or inconsistent with common sense should be avoided.

(Citations omitted.)

In the language of the statute, sexual abuse is defined as "any *act* that involves sexual molestation or exploitation of a child." Art. 27, § 35C (a)(6)(i) (emphasis supplied). The word "act," however, is not defined in the statute. The same definitional analysis that we have been called upon to conduct in this case was recently accomplished by the Court of Appeals in *Degren v. State,* 352 Md. 400, 722 A.2d 887 (1999). The Court explained that in *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976), it had examined the amendments to § 35C as related to the word "act" in the context of child physical abuse. In *Degren v. State,* an adult with responsibility for supervising a child was charged with sexual abuse under § 35C, for failing to prevent another person from sexually molesting or exploiting the child. *Degren,* therefore, called upon the Court to determine whether the word "act" encompassed an omission or failure to act in the context of child sexual abuse. Relying on its language in *Fabritz,* the Court opined:

> There we concluded that the General Assembly, through its various changes to the language of the statute, consistently expanded its scope and applicability to better achieve the goal of protecting "children who have been the subject of abuse" (citation omitted). In 1973, for instance, the General Assembly broadened the conduct covered by the statute to include not only direct physical abuse but, as we have said, an act or failure to act that constituted cruel or inhumane treatment or a malicious act or acts. In 1974, the Legislature again amended the child abuse statute to include sexual abuse within the definition of child abuse: " 'abuse' shall

mean ...:(B) any sexual abuse of a child, whether physical injuries are sustained or not." 1974 Md. Laws, Chap. 554, § (b)(7)(B). Sexual abuse was defined as

*any act or acts* involving sexual molestation or exploitation, including but not limited to incest, rape, carnal knowledge, sodomy or unnatural or perverted sexual practices on [a] child by any parent, adoptive parent or other person who has the permanent or temporary care or custody or responsibility for supervision of a minor child. (Emphasis supplied.)

*Id.* § (b)(8). The General Assembly declared "as its legislative intent and purpose the protection of children who have been the subject of abuse" and the purpose of this 1974 amendment was to "expand[ ] the definition of child abuse [and] defin[e] sexual abuse." *Id.* (introductory paragraph and purpose clause). .

*Degren,* 352 Md. at 419–20, 722 A.2d 887.

■ Child sexual abuse by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time. The statutory definition of this crime does not necessarily contemplate a single act, as denoted by the legislative history of the statute. The legislative purpose of the statute is to protect children. Therefore, the counts of the indictment charging Cooksey in a continuing course of conduct with child sexual abuse were proper and did not require dismissal.

Cooksey was also charged with second and third degree sexual offense, respectively, under Md.Code (1957, 1996 Repl. Vol.), Art. 27, §§ 464A and 464B. In relevant portions, § 464A and § 464B state:

§ 464A Second degree sexual offense.

(a) A person is guilty of a sexual offense in the second degree if the person engages in a *sexual act* with another person: ... (3) Under 14 years of age and the person performing the sexual act is four or more years older than the victim.

§ 464B Third degree sexual offense.

(a) A person is guilty of sexual offense in the third degree if the person engages in . . .

. . .

(3) *Sexual contact* with another person who is under 14 or 15 years of age and the person performing the sexual act is four or more years older than the victim. . . . (Emphasis supplied.)

Section 461 defines sexual act and sexual contact as follows:

(e) "Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes.

(f) "Sexual contact" as used in §§ 464B and 464C, means the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue, into the genital or anal opening of another person's body if that penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party. It does not include acts commonly expressive of familial or friendly affection, or acts for accepted medical purposes.

Cooksey argues that the State's Response to Bill of Particulars alleges multiple offenses, but the indictment charges four (4) individual counts under the above statute. He maintains, then, that the indictment lacks specificity due to uncertainty of dates. Moreover, he insists that it is duplicitous to utilize a "continuous course of conduct" theory to charge him with

multiple offenses in a single count, and that duplicity endangers the reliability of a unanimous jury verdict.[7] The State, on the other hand, maintains that because of the young age of the victims, it is impossible to provide specific dates as to when the incidents occurred. The State insists, therefore, that a good faith effort was made to establish both a reasonable time frame and an estimate as to the number of incidents involved. The State also argues, quite persuasively, that to charge Cooksey separately for each of the alleged offenses would be logistically overwhelming.

Md. Rule 4–203, *inter alia*, states that two or more offenses may be charged in separate counts of the same charging document if the offenses are the same or similar in nature, or based on the same act or transaction. The provision of this rule, "that different offenses are to be charged in a separate count for each offense, even though they may be charged in the same charging document, is mandatory." *Ayre v. State*, 21 Md.App. 61, 65, 318 A.2d 828 (1974). As noted by the State, some of our statutes do provide for charging under a continuous course of conduct theory. They primarily relate to theft, destruction of property, or illegal access to computers, however. In addition, the theory is primarily limited to a means of aggregating the amounts involved in the theft when determining whether to charge the crime as a misdemeanor or felony. *See generally* Art. 27 § 340(n)(5) (theft committed pursuant to one scheme or continuing course of conduct may be considered as one offense and the value of the property aggregated to determine felony or misdemeanor theft); Art. 27 § 111(d) (two or more acts of destruction of another's property, pursuant to one scheme or continuing course of conduct, may be considered as one offense and the value of damage aggregated to determine the penalty); Art. 27 § 145(i) (person committing credit card forgery or theft pursu-

---

7. "Duplicity is the charging of several separate offenses in a single count." R.M. Kantrowitz & R. Witkin, *Criminal Defense Motions*, § 9.7(191), quoting *Tripp v. United States*, 381 F.2d 320, 321 (9th Cir.1967). *See also* 1 C.A. Wright, *Federal Practice & Procedure*, § 142 at 469 (1982).

ant to one scheme or continuing course of conduct, such conduct may be considered as one offense and the value aggregated to determine felony or misdemeanor); Art. 27 § 146(e) (when illegal access to a computer is committed pursuant to one scheme or continuing course of conduct, the conduct may be considered one offense) [8]; *Webb v. State,* 311 Md. 610, 536 A.2d 1161 (1988) (possession of a handgun as a continuing course of conduct is one offense); *Connelly v. State,* 322 Md. 719, 589 A.2d 958 (1991) (probable cause may be continual, a course of conduct, in activities such as drug trafficking).

In cases such as this one, alleging continuous sexual offenses of a child, particularly by an abuser who lives with the child, information regarding specific dates and places of criminal conduct is often impossible to ascertain. Selecting the number of incidents on which to charge the defendant is therefore quite difficult. As discussed, *supra,* many states have enacted legislation describing ongoing abusive activity as a separate felony in order to resolve this difficulty in charging. Although Maryland has no such statute, the State is not foreclosed from obtaining convictions of defendants who have abused children over a period of time. As stated by the Supreme Court of Idaho in 1929, "It would be a very weak rule of law that would permit a man to ravish [numerous young children] and then say in effect: 'You cannot convict me of th[ese] crime[s] as you did not guess the right date.'" *State v. Clark,* 209 Mont. 473, 682 P.2d 1339, 1345 (1984) (quoting *State v. Rogers,* 48 Idaho 567, 283 P. 44, 45 (1929)).

In *Cook v. State,* 100 Md.App. 616, 642 A.2d 290 (1994), Cook similarly argued that the indictment against him, charging, *inter alia,* child abuse, second degree sexual offense, and third degree sexual offense, should be dismissed due to uncertainty as to the times of the commission of the offenses.

---

**8.** Many states prohibit some form of computer related crime by modification of existing laws pertaining to theft. Richard C. Hollinger and Lonn Lanza–Kaduce, "The Process of Criminalization: the Case of Computer Crime Laws," *Criminology,* Vol. 6, No. 1 (1988): 104.

These abuses were alleged to have occurred "continually from the summer of 1974 up through the time alleged in the indictment in Harford County, Maryland. The abuse continued after the family moved to Baltimore County as well [*i.e.* 1978]." This Court, relying on the decision in *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989), held:

> "In *Mulkey v. State [State v. Mulkey]*, the Court of Appeals recognized that the "ability of a child [victim] to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory." Accordingly it held that, in the context of a sexual offense case involving a child victim, general allegations as to the time of the offense are constitutionally sufficient where the specific date or dates of the offense is unknown. In addition, if the offense is continuing in nature, as alleged in the instant case, the State simply may be unable to pinpoint exact dates in the charging document. We have held that such a technicality should not enable a criminal defendant to "thwart justice." When the offense is continuing in nature, a criminal defendant's ability to prepare a defense will not be frustrated where he or she is put on notice that the State plans to show a "pattern of ongoing abuses." Thus, a bill of particulars stating that various child sexual abuse offenses occurred generally during an eight year period has been held constitutionally valid under Article 21."

*Cook*, 100 Md.App. at 629–30, 642 A.2d 290 (citations omitted).

■ We therefore find no error, based on specificity, in the State's charging Cooksey in a continuous course of conduct between July 22, 1991, and July 22, 1992, in the sexual offense involving Casey C; and between June 30, 1984, and August 17, 1987, in the sexual offense involving Holly M. While it was not an issue specifically raised by the State in this appeal,[9] we

---

9. We reviewed the trial court's decision on this issue because specificity in the indictment and Bill of Particulars implicates Cooksey's "right to be informed of the accusation," as provided in Art. 21 of the Maryland Constitution.

would affirm the trial court's decision that the indictment was reasonably particular as to the dates, given the continuing nature of the offenses.

The charging of Cooksey in a continuous course of conduct, however, presents an issue other than that based on uncertainty of time. Cooksey asserts that charging multiple incidents of sexual offense in single counts is duplicitous. The State, on the other hand, argues that it would be overwhelming and impractical, not to mention oppressive for the defendant, to require it to indict continuous sexual offense cases involving a child by separate counts for each infraction. The State also notes that if Cooksey were reindicted on separate counts for every individual sexual act he was alleged to have committed, the indictment would contain between 120 and 145 counts, instead of only four. The trial court also expressed concern that Cooksey may have created a self-inflicted wound by moving to have the indictment dismissed on duplicity grounds. The court stated:

> The potential incarceration to which the defendant is exposed under the instant indictment appears to be Fifty (50) years. Upon review of the States' Response to Bill of Particulars, if the defendant was re-indicted on specific incident offenses ... and convicted of those counts, his incarceration potential probably exceeds 2025 years.

Cooksey thus implies that any time there is evidence of more than one incident the State should be required to file separate charges on each incident.[10] It is interesting to note that prosecutors are often accused by defense counsel of overcharging in their indictments, but are seldom, if ever, accused of undercharging. It is well-settled that the determination of which criminal charges, if any, to bring is a matter of

---

**10.** Where the same offenses occurred on various dates that cannot be recalled, appellant's suggested manner of charging may also create the potential for dismissal on multiplicity grounds. Multiplicity is the charging of a single offense in more than one count. 1 C. Wright, *Federal Practice and Procedure: Criminal* 2d § 142 (1982, 1987 Supp.). Without a date to distinguish the multiple acts or offenses, the various counts in the indictment would read identically.

prosecutorial discretion. *See, e.g.,* Md.Code (1957, 1996 Repl. Vol.), Art. 10, § 34 (directing the State's Attorney to "prosecute and defend, on the part of the State, all cases in which the State may be interested"). A prosecutor's decision as to a particular charge is within his or her discretion. Undeniably, the State's Attorney has nearly unbridled constitutional discretion in deciding whether to prosecute, whom to prosecute, what charges to bring, and what charges to pursue. *Brack v. Wells,* 184 Md. 86, 90, 40 A.2d 319 (1944); *Teeter v. State,* 65 Md.App. 105, 119, 499 A.2d 503 (1985). Where, as here, the defendant is accused of a continuous course of conduct, the burden of isolating specific incidents on specific dates would be insurmountable for the State.

With those principles in mind, we turn now to the most problematic issue before this Court. Although the State may determine what charges, if any, to bring against a defendant, the judiciary is charged with determining the constitutionality of *how* the defendant was charged. The crux of this appeal turns on the gravamen of duplicity in the indictment: Whether charging Cooksey with one count of second degree sexual offense and one count of third degree sexual offense, in a continuing course of conduct, is fatally duplicitous. A related statute, Art. 27, § 464C, sexual offense in the fourth degree, has been interpreted to permit each infraction to be charged individually as separate offenses. *State v. Boozer,* 304 Md. 98, 108–09, 497 A.2d 1129 (1985)(separate acts resulting in separate insults to the victim may be separately charged and punished, even though they occur as part of the same criminal transaction).

"[T]he prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy." *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980). Based on the information provided by the State in the indictment and Response to Bill of Particulars, as well as our decision in *Mulkey, supra,* Cooksey was provided adequate notice of the charges against him, even

though the State was not able to provide specific dates in which the incidents allegedly occurred. Because he was charged under a four-count indictment, if convicted, Cooksey's potential sentence as estimated by the trial court appears to be fifty years. There is, therefore, no risk that Cooksey would be prejudiced. A conviction would result in a sentence commensurate with four violations of the law, not a sentence for each individual incident of abuse. Finally, because the State used time frames, as opposed to specific dates, Cooksey cannot be placed in double jeopardy and later tried for other incidents within the time spans provided by the State. *Copsey v. State,* 67 Md.App. 223, 227, 507 A.2d 186 (1986) (because the State prudently charged appellant with a single continuing offense from January 1, 1979, through November 1, 1984, appellant was placed in jeopardy for any sexual offense he perpetrated upon the victim at any time during that all embracing period). The only legitimate basis for asserting the indictment was duplicitous, then, lies with Cooksey's jury unanimity concern.

Where, as here, the State alleges continuous sexual offenses of a child against a defendant, occurring at unspecified times or places, there is always the risk that jurors may vote to find the defendant guilty on a particular count, but with different incidents or conduct in mind. The constitutional safeguard is offended when the jurors are left to choose the acts of abuse upon which to base a verdict. Such a method could result in a "patchwork" verdict,[11] ripe for constitutional challenge.

"By its Declaration of Rights, common law, and procedural rules, Maryland continues an English tradition dating from the Middle Ages in requiring that criminal jury verdicts

---

11. The term "patchwork" verdict is used to describe a jury verdict based on different offenses. See *United States v. Rogers,* 41 F.3d 25 (1 st Cir.1994); *State v. Avery,* 126 Ohio App.3d 36, 709 N.E.2d 875 (1998); *State v. Camacho,* 153 N.J. 54, 707 A.2d 455 (1998); *Tidwell v. State,* 922 S.W.2d 497 (Tenn.1996). *See also* Trubitt, *Patchwork Verdicts, Different–Jurors Verdicts, and American Jury Theory: Whether Verdicts are Invalidated by Juror Disagreement on Issues,* 36 Okla. L.Rev. 473 (1983).

be unanimous." *Lattisaw v. State,* 329 Md. 339, 344, 619 A.2d 548 (1993). Art. 21 of the Maryland Declaration of Rights states:

> That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, *without whose unanimous consent he ought not to be found guilty.* (Emphasis supplied.)

The language of Article 21, *supra,* and the Sixth Amendment to the U.S. Constitution, guaranteeing a right to trial by an impartial jury in all criminal prosecutions, is virtually identical. Article 21, however, *expressly* provides the right to a unanimous jury verdict, while the Sixth Amendment does not. *Johnson v. Louisiana,* 406 U.S. 380, 381, 92 S.Ct. 1643, 32 L.Ed.2d 170 (1972); *Apodaca v. Oregon,* 406 U.S. 404, 407–08, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Long ago, the Court of Appeals also stated, "U*nanimity* is indispensable to the sufficiency of the verdict. . . ." *Ford v. State,* 12 Md. 514, 549 (1859) (emphasis in original). Likewise, Maryland Rule 4–327(a) instructs that "[t]he verdict of a jury shall be unanimous and shall be returned in open court."

Although this Court may be unable to rely upon a rule of law such as those found in California and New York, expressly proscribing a course of sexual conduct, we are also unpersuaded by the reasoning in cases such as *Van Hoek, supra,* and its progeny. As succinctly stated in *People v. Jones,* 270 Cal.Rptr., at 616, 792 P.2d 643, "any constitutional principles or evidentiary standards we develop should attempt to assure that the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time." We are of the belief that even a duplicitous indictment need not be dismissed where there is no unfairness to the defendant. In order to uphold a conviction in this sort of case,

where the prosecution does not elect to rely upon a specific instance, the trial judge must ensure that the record clearly shows that the jurors understood their duty unanimously. The jury must agree unanimously that the defendant committed the same single act, or that he committed all of the acts described by the victim within the time period charged. A jury instruction to this effect can safeguard the defendant's constitutional rights by ensuring a unanimous verdict. *United States v. Holley,* 942 F.2d 916, 925–29 (5th Cir.1991), *cert. denied,* 510 U.S. 821, 114 S.Ct. 77, 126 L.Ed.2d 45 (1993) (citing *United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988) ("Courts rejecting duplicity challenges to multiple-predicate counts, however, often premise their rulings on the condition that later augmented jury instructions will adequately protect the defendant against the risk of an ununanimous verdict")). See *People v. Callan,* 174 Cal.App.3d 1101, 220 Cal.Rptr. 339, 345 (1985) (unanimity instruction saves uncertainty as to the specific acts relied upon by the People); *People v. Madden,* 116 Cal.App.3d 212, 171 Cal.Rptr. 897, 901 (1981) (trial court erred in failing to give unanimity instruction, *sua sponte,* where the information charged fewer acts than shown by the evidence). *See also United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983) ("When it appears ... that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure [that] the jury understands its duty to unanimously agree to a particular set of facts.").

■ Jurisdictions requiring unanimity of jury verdicts in criminal cases and holding that sexual assaults are not "continuing offenses" appear to be in agreement. When evidence of multiple culpable acts is adduced to prove a single charged offense, the defendant is entitled either to an election by the prosecution of the single act upon which it is relying for a conviction, or to a specific unanimity instruction. *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 177 (1984), *modified*

*by, State v. Kitchen,* 110 Wash.2d 403, 756 P.2d 105 (1988); *State v. Hayes,* 81 Wash.App. 425, 914 P.2d 788 (1996), *review denied,* 130 Wash.2d 1013, 928 P.2d 413 (1996). *See also State v. Jones,* No. 20543, —— P.2d ——, 1998 WL 727344 (Haw. App. Oct. 16, 1998); *State v. Dell'Orfano,* 651 So.2d 1213 (Fl.App. 4 Dist.1995); *State v. Little,* 260 Mont. 460, 861 P.2d 154 (1993); *Baine v. State,* 604 So.2d 258 (Miss.1992); *State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680 (1989), *cert. denied,* 109 N.M. 419, 785 P.2d 1038 (1990); *Covington v. State,* 703 P.2d 436 (Ala.App.1985).

A further review of cases involving duplicitous counts in an indictment reveals that in many instances the difficulty may be resolved without violating a defendant's constitutional rights. *See United States v. Blandford,* 33 F.3d 685, 699 (6 [th] Cir.1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995) (concluding that duplicity of single count alleging four acts of extortion was cured by jury instruction requiring jury unanimously to agree on one particular payment alleged in count). *See also United States v. Trammell,* 133 F.3d 1343, 1354 (10 [th] Cir.1998) (stating that duplicitous indictment can be cured by requiring jury unanimity on one particular act charged in count); *United States v. Karam,* 37 F.3d 1280, 1286 (8 [th] Cir.1994), *cert. denied sub nom., El Hani v. United States,* 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995) (the risk of a nonunanimous jury verdict inherent in a duplicitous count may be cured by a limiting instruction); *United States v. Duncan,* 850 F.2d 1104, 1112 n. 8 (6 [th] Cir.1988) ("One cure for an otherwise duplicitous indictment is to give an augmented instruction requiring unanimity on one or the other of the acts charged within a count that otherwise appear to constitute separate offenses."); *United States v. Weller,* No. 98–40112–01–RDR, 1999 WL 280425 at 2 (D.Kan. April 26, 1999) (the issue of jury unanimity can be resolved through appropriate jury instructions); *United States v. Gordon,* 990 F.Supp. 171, 179 (E.D.N.Y.1998) (same); *United States v. Steurer,* 942 F.Supp. 1183, 1187 (N.D.Ill.1996) (same).

Our decision in this case is not intended to encourage the bringing of multiple charges when in the prosecutor's judg-

ment they are unwarranted. The jury unanimity instruction is an option permitted because in the majority of these cases the charge will involve crimes against children. Often these cases turn on the jury's determination of credibility: namely, the victim's version versus the accused's version. A delicate balance must be achieved between the prosecution's need to secure a conviction in child sexual offense and abuse cases and the defendant's right to be informed of the charges with sufficient factual detail to enable him to prepare a defense, and to be afforded a unanimous jury verdict. The indictment and Response to Bill of Particulars in the instant case were sufficient to enable the defendant to prepare his defense and avoid prejudicial surprise. A proper jury instruction would have protected Cooksey's right to a unanimous verdict. We believe, then, that it was premature in this sort of case for the trial court to have found the counts charged by the State in the indictment fatally duplicitous.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**