752 A.2d 606

Charles Anthony COOKSEY

v.

STATE of Maryland.

No. 126, Sept. Term, 1999.

Court of Appeals of Maryland.

June 2, 2000.

Reconsideration Denied June 23, 2000.

Franklin B. Olmsted, LaPlata, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

The Circuit Court for Charles County dismissed a four-count indictment that charged petitioner with second and third degree sexual offenses and sexual child abuse on the ground that each of the counts was duplicitous. The Court of Special Appeals reversed that judgment, finding no duplicity with respect to the counts charging sexual child abuse and, as to the other counts, that dismissal on the ground of duplicity was premature. The two issues before us are (1) whether a count that charges a person with having committed what, in law, is a single-act sexual offense, on several occasions over a substantial period of time, effectively charges more than one offense and is dismissible on the ground of duplicity, and (2) if so, whether sexual child abuse, as charged in this case, is necessarily a single-act offense. We shall answer the first question in the affirmative and the second in the negative and therefore reverse in part and affirm in part the judgment of the Court of Special Appeals.

## BACKGROUND

The indictment charged petitioner, in Count 1, with having, "in a continuing course of conduct" between July 22, 1991, and July 22, 1992, feloniously committed "a" sexual offense in the second degree by engaging in "a sexual act" with Casey C., a child then under fourteen, at a time when petitioner was four or more years older then the child. In response to petitioner's demand for particulars, the State alleged that the "sexual act" was cunnilingus, that it occurred "up to fifteen times" during the year period, but that, because of the child's youthful age, the State was not able to state precisely when any of the acts occurred. The statute at issue, Maryland Code, Article 27,

§ 464A(a)(3) declares that a person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person who is under 14 years of age and the person performing the sexual act is four or more years older than the victim. Section 461A of Article 27 defines "sexual act" to include cunnilingus.

Count 2 charged that, during the same year, petitioner, "in a continuing course of conduct," committed a sexual offense in the third degree by engaging in sexual contact with Casey C., who was then under 14, at a time when petitioner was more than four years older than the victim. In its response to the demand for particulars, the State identified the sexual contact as consisting of petitioner's touching the victim's buttocks and genitals with his hand, inserting his finger into her vagina, attempting to penetrate her vagina with his penis, rubbing her hand on his penis, and placing her on top of him and moving her up and down. It averred that this conduct occurred "[u]p to fifteen" times during the year-long period but that the State was unable to be more specific. The relevant statute, § 464B(a)(3), makes it a sexual offense in the third degree for a person to "engage in ... [s]exual contact with another person who is under 14" if the person "performing the sexual contact" is four or more years older than the victim. Section 461(f) defines "sexual contact," in relevant part, as "the intentional touching of any part of the victim's anal or genital areas or other intimate parts for the purpose of sexual arousal or gratification or for abuse of either party."

Counts 3 and 4 charged petitioner with sexual child abuse, in violation of Article 27, § 35C. Count 3 alleged that, in a continuing course of conduct, petitioner, being a household member and one who had permanent and temporary care and custody and responsibility for the supervision of Casey C., a child under 18 years of age, caused sexual abuse to her "by engaging in sexual molestation and sexual exploitation." In its particulars, the State averred that the conduct constituting the sexual molestation and exploitation was the conduct alleged in Counts 1 and 2 and that it occurred "[u]p to fifteen" times. Count 4 charged petitioner with sexually abusing,

through sexual molestation and exploitation, another child under the age of 18—Holly M.—who was not alleged to be a member of the household but a child over whom petitioner had permanent and temporary care and custody and responsibility for supervision. In its particulars, the State averred that the conduct committed against Holly consisted of the petitioner's fondling the victim's breasts with his hands, twisting her nipples, placing his mouth to her breasts, rubbing against the victim, exposing his penis to her, and masturbating in her presence, and that this conduct occurred between 75 and 100 times during the period from June 30, 1984 through August 17, 1987. Section 35C defines "sexual abuse" as "any act that involves sexual molestation or exploitation" by a parent, family or household member, or person having custody or responsibility for supervision of the child, including incest, rape, sexual offense in any degree, sodomy, or unnatural or perverted sexual act.

Upon receipt of the particulars, petitioner moved to dismiss the indictment on a number of grounds, including the claim that each count was duplicitous and in violation of Maryland Rule 4–203(a) and that it did not sufficiently inform him of the accusation, in violation of Articles 21 and 24 of the Maryland Declaration of Rights and the Sixth and Fourteenth Amendments to the U.S. Constitution. In response to the motion, the State amended its bill of particulars to add, as to Counts 1, 2, and 3, that they charge "one offense, which comprises up to fifteen incidents," and, as to Count 4, that it charges one offense, "which comprises between seventy-five and one hundred incidents." Relying largely on *State v. Mulkey,* 316 Md. 475, 560 A.2d 24 (1989), the court found no violation of the requirement that the charges be stated with reasonable particularity but concluded that each of the four counts was duplicitous and, on that ground, dismissed them. After declaring that the "unit of prosecution" for each of the offenses was "one prosecution per single act," the court stated that, even if Maryland were to follow "a progressive and policy oriented balancing test this indictment would still be fatally duplicitous."

The Court of Special Appeals reversed. It first concluded that sexual child abuse could, indeed, be a continuing offense crime. Noting that the word "act," as used in the definition of sexual abuse, was not defined, it held that "[c]hild sexual abuse by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time." *State v. Cooksey*, 128 Md.App. 331, 738 A.2d 298 (1999). On that theory, the court found that Counts 3 and 4, charging sexual abuse in a continuing course of conduct, were not duplicitous.

The appellate court's treatment of Counts 1 and 2 was different. Second and third degree sexual offenses, as defined in Maryland law, are "single act" crimes. Maryland has not enacted, as have California and New York, a statute creating a course of conduct offense, and the court seemed to recognize, at least facially, that the charging of more than one single act offense in a single count made the count duplicitous. The court attempted to deal with that problem by looking behind the prohibition against duplicitous pleading to the reasons for the prohibition, and it drew from *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980) three such reasons: to implement a defendant's right to (1) reasonable notice of the charge, (2) a unanimous verdict, and (3) protection against double jeopardy. It then determined that there was no danger to any of those rights from the indictment at issue. As supplemented by the particulars supplied by the State, the indictment sufficed under our decision in *Mulkey, supra*, 316 Md. 475, 560 A.2d 24, to provide sufficient notice. *Cooksey, supra*, 128 Md.App. at 352, 738 A.2d at 310.

The problem of jury unanimity was a bit more difficult. The danger in combining several single act offenses in a single count is that all 12 members of the jury may be convinced that the defendant committed one of those acts but not be able to agree on which one. The result would be a conviction for a single act offense without a unanimous finding as to the offense committed—a "patchwork" verdict, in the words of the court—that would raise significant Constitutional concerns. Relying on out-of-State cases, the court concluded that that

problem could be solved by requiring, at the end of the case, "either ... an election by the prosecution of the single act upon which it is relying for a conviction, or ... a specific unanimity instruction." *Id.* at 355, 738 A.2d at 311. The instruction, apparently, would require the jury, in order to convict, to agree on one act that was committed. Although not addressing the double jeopardy problem explicitly, the court presumably believed that the election/instruction approach would resolve that problem as well. The court admonished that its decision was not intended to encourage the bringing of multiple charges in a single count, but that "[a] delicate balance must be achieved between the prosecution's need to secure a conviction in child sexual offense and abuse cases and the defendant's right to be informed of the charges with sufficient factual detail to enable him to prepare a defense, and to be afforded a unanimous jury verdict." *Id.* at 357, 738 A.2d at 312. Because in its view a proper instruction would have protected petitioner's right to a unanimous verdict, the court concluded that dismissal of the indictment on the ground of duplicity was "premature." *Id.*

## DISCUSSION

### *The Rule Against Duplicitous Pleading*

In *State v. Warren,* 77 Md. 121, 122, 26 A. 500 (1893), we defined duplicity in criminal pleading as "the joinder of two or more distinct and separate offenses in the same count." We observed that "[t]he object of all pleading, civil and criminal, is to present a single issue in regard to the same subject-matter, and it would be against this fundamental rule to permit two or more distinct offenses to be joined in the same count." *Id.* at 121–22, 26 A. at 500. That principle has been confirmed by us on a number of occasions. *See Mohler v. State,* 120 Md. 325, 87 A. 671 (1913); *Weinstein v. State,* 146 Md. 80, 125 A. 889 (1924); *Jackson v. State,* 176 Md. 399, 5 A.2d 282 (1939); *Kirsner v. State,* 183 Md. 1, 36 A.2d 538 (1944); *Ford v. State,* 330 Md. 682, 699, 625 A.2d 984, 990 (1993); *Robinson v. State,*

353 Md. 683, 688 n. 4, 728 A.2d 698, 700 n. 4 (1999) (distinguishing duplicity and multiplicity).

■ The prohibition against duplicity in both civil and criminal cases began as and remains a rule of pleading. It had a common law origin and is now codified in the Rules of this Court. Maryland Rule 2–303(a) requires, as a rule of civil pleading, that "[e]ach cause of action shall be set forth in a separately numbered count." Rule 4–203(a), dealing with criminal pleading, states the principle equally well though more indirectly. It allows two or more offenses to "be charged in separate counts of the same charging document if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." By limiting what may be charged even in separate counts of a single charging document, the Rule rather clearly precludes the charging of separate offenses in a single count. See Ayre v. State, 21 Md.App. 61, 318 A.2d 828 (1974); State v. Hunt, 49 Md.App. 355, 432 A.2d 479 (1981).

Although the prohibition against duplicity is a rule of pleading, its application in criminal cases has underlying substance; it serves to protect several basic rights that may be seriously jeopardized by the charging of separate offenses in a single count. The most basic right protected by the rule—though one that is not often separately articulated—is that of fundamental fairness, to both the defendant and the State. In Weinstein v. State, supra, 146 Md. 80, 125 A. 889, we pointed out that Maryland does not allow the splitting of a verdict on a single count; there can be but one verdict on a count. Thus, "if two distinct crimes are charged in the same count, although they may believe [the defendant] guilty of one and not guilty of the other, the jury trying the case must nevertheless either convict [the defendant] of both or acquit him [or her] of both." Weinstein, 146 Md. at 83, 125 A. at 890. It takes no extended discussion to demonstrate both the unfairness and the illogic emanating from that prospect. The unfairness to the State of

the jury returning a unitary verdict of not guilty when it unanimously agreed that the defendant was guilty of at least one offense charged in the count may be simply a matter affecting public policy. The unfairness of an approach that would allow a defendant to be convicted of a crime that the jury actually concludes the defendant did not commit transcends public policy and is obviously of the highest Constitutional dimension.

Among the equally important but subordinate rights often identified as being protected by the prohibition against duplicitous pleading are the right of the accused to reasonable notice of the charges, guaranteed by the Sixth Amendment to the U.S. Constitution and Article 21 of the Maryland Declaration of Rights; the right, specific in Article 21 of the Maryland Declaration of Rights, to jury unanimity; and the right, guaranteed by the Fifth Amendment to the U.S. Constitution and Maryland common law, not to be placed in double jeopardy. Courts have also regarded the prohibition against duplicity as avoiding prejudice and confusion from evidentiary rulings made during the trial and assuring that, if convicted, the defendant is appropriately sentenced. *See United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir.1980), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir.1978); *United States v. Starks*, 515 F.2d 112, 116–17 (3d Cir.1975); *State v. Lomagro*, 113 Wis.2d 582, 335 N.W.2d 583 (1983).

The double jeopardy and jury unanimity concerns arise because a court cannot always be certain that a verdict rendered on a duplicitous count truly represents the unanimous agreement of the jury as to each offense charged in the count. If a guilty verdict is rendered on a count containing two or more separate offenses, there is the prospect of uncertainty as to whether the jury unanimously found guilt as to all offenses, at least one but less than all, or none, and, if at least one but less than all, which ones. Giving credence to what we said in *Weinstein*, it is possible, and often not improbable, that, although all jurors were convinced that the defendant committed at least one offense alleged in the count and

returned a verdict of guilty on that basis, they either did not all agree as to which one or they agreed as to a particular one but not as to others. Had the offenses been charged separately, there may have been either an acquittal or a hung jury/mistrial on one, several, or all of them.

That uncertainty raises a host of problems, beginning, chronologically, with the fashioning of a proper sentence. May the judge properly assume from a unitary guilty verdict that the defendant committed everything charged in the duplicitous count and sentence accordingly? Beyond the problem of sentencing, if, when faced with a guilty verdict on a duplicitous count, an appellate court were to conclude that the evidence was sufficient as to one charge included in the count but not another, or that there was some prejudicial trial error affecting one charge but not another, the entire judgment entered on the count may have to be stricken, including the part as to which there was no error, because the court could never be sure whether the verdict rested in whole or in part on the charge as to which error was found. *See Nightingale v. State,* 312 Md. 699, 708–09, 542 A.2d 373, 377–78 (1988); *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356, 1371 (1957). In such an event, any retrial on the several charges would raise the real prospect of the defendant being retried for an offense that the first jury believed he or she did not commit. Even if the jury is hung on a duplicitous count, the question lurks whether it may have acquitted on one or more of the combined offenses had they been separately charged, and, upon any retrial, the same double jeopardy prospect is presented. *See* 4 WAYNE LAFAVE, JEROLD ISRAEL, NANCY KING, CRIMINAL PROCEDURE, § 19.3(c) (2d ed.1999).

In concept, the two issues presented here may be recast as follows: first, to what extent may the State *satisfy* the rule against duplicity by treating successive acts, each of which constitutes an offense that could be charged separately, as one offense committed through a continuing course of conduct; and second, should the rule against duplicitous pleading be strictly applied when (1) there is some perceived higher social

purpose for not strictly applying it in a particular setting, and (2) the concerns and rights underlying the rule can be addressed in other ways? We shall address those issues in turn.

### The Continuing Course of Conduct Offense

The first issue is whether the rule has been violated at all. Has the State charged more than one offense in any of the four counts? Simplistically, the State contends, through its amended particulars, that it has not done so—that it has charged "one offense, which comprises up to fifteen [or between 75 and 100] incidents." That, of course, merely begs the question. We are not dealing here with the averment of but one criminal act, the uncertainty being when it was committed (see State v. Mulkey, supra, 316 Md. 475, 560 A.2d 24, Com. v. King, 387 Mass. 464, 441 N.E.2d 248 (1982)), but, at least in Counts 1 and 2, with the allegation of many criminal acts occurring over an extended period of time. The question of whether, and under what circumstances, such separate criminal acts may combine to create one separately punishable offense—a kind of e pluribus unum approach—has arisen in at least four different contexts, some of which often overlap: (1) when the acts are committed as part of a single incident or transaction; (2) when they are simply descriptive of a single offense; (3) when they are committed at different times but in a continuing course of conduct with a single objective; and (4) when a single offense may be committed in two or more different ways. We have dealt with all four contexts.

In State v. Warren, supra, 77 Md. 121, 26 A. 500, we applied the "single transaction" theory in holding that a count that charged the defendant with stealing, at the same time, several articles of property belonging to several different owners charged but one offense—not as many offenses as there were owners of the stolen property—and, accordingly, was not duplicitous. The gist of the offense, we declared, was the taking of the property, and the quality of that act was not affected by the fact that the property taken belonged to several persons rather than just one. In conformance with that view, we also concluded in Warren that the value of all of

the property taken in the single transaction could be aggregated to determine whether the offense was grand or petty larceny.

In *Jackson v. State, supra,* 176 Md. 399, 5 A.2d 282, we examined the second context. The count charged the defendant with the common law offense of keeping a disorderly house. It alleged, among other things, that he maintained a house for the sale of alcoholic beverages, that he kept such beverages without a license, that he allowed idle and ill-disposed persons to assemble there, and that he procured persons for the purpose of unlawfully selling them alcoholic beverages. Notwithstanding that the keeping of alcoholic beverages without a license constituted a separate offense that could have been separately charged, we found no duplicity in the count. The charge in the count was keeping a disorderly house, and the challenged averments were merely "explanatory of the elements of the disorder." *Id.* at 402, 5 A.2d at 283. An indictment may properly aver "any of the acts which the State might establish in order to show the character of the house." *Id.*

In *Mohler v. State,* 120 Md. 325, 87 A. 671 (1913), we addressed the continuing course of conduct circumstance. In a one-count indictment, the defendant, a constable, was charged with malfeasance in office. The charge was based on allegations that he had unlawfully and corruptly accused one Spampinato of selling goods without a license, by virtue of his office corruptly obtained a warrant from a justice of the peace, arrested Spampinato pursuant to the warrant, brought him before the justice of the peace for trial but corruptly coerced him to pay $15 to the justice of the peace without a trial, and then received part of the $15 from the justice of the peace. Mohler moved to dismiss the indictment, claiming that each of those acts was a separate crime and that their combination in one count made the indictment duplicitous. The trial court denied the motion and we affirmed. Although we confirmed, as a fundamental principle of pleading, that more than one distinct offense may not be charged in a single count, we also recognized "that a count is not double because it charges

several related acts, all of which enter into and constitute one offense, although such acts may in themselves constitute distinct offenses." *Id.* at 327, 87 A. at 671–72. We explained:

> "If the acts alleged are of the same nature *and so connected that they form one criminal transaction,* they may be joined in one count, although separately considered they are distinct offenses. If they can be construed *as stages in one transaction* and are not inherently repugnant, the count will not be bad for duplicity."

*Id.* at 328, 87 A. at 672 (emphasis added).

The misconduct charged to Mohler, we concluded, was that he corruptly obtained money under cover of his office. The other averments, although they could have been charged as separate offenses, "were only recitals of the means taken by him to accomplish the end" and "[c]onsidered as a whole, they constitute but one transaction." *Id. Compare Kirsner v. State, supra,* 183 Md. 1, 36 A.2d 538, where we held that (1) a count alleging the violation of several sections of the Baltimore City Building Code that proscribed different conduct was fatally duplicitous, and (2) when a statute makes each day's violation a separate offense, not more than one day's violation may be charged in a single count.

We applied the same kind of "continuing transaction" approach in *Horsey v. State,* 225 Md. 80, 169 A.2d 457 (1961), which presented a type of converse situation to that in *Warren.* In *Horsey,* the issue was not whether an indictment was duplicitous but whether the value of goods taken by the defendant from his employer at different times could be aggregated to establish one felony, rather than separate misdemeanors. We held that, when a person steals articles from the *same* owner at *different* times, a trial court may properly find that the separate takings were pursuant to a common scheme or intent and that, if they were, "the fact that the takings occur on different occasions does not establish that they are separate crimes." *Id.* at 83, 169 A.2d at 459. *See also Delcher v. State,* 161 Md. 475, 158 A. 37 (1932) (count charging false pretense at specific time not duplicitous because

of allegation that defendant received money pursuant to the scheme on several different occasions).

We first dealt with the fourth context in *Stearns v. State*, 81 Md. 341, 32 A. 282 (1895), a gambling case. The defendant was charged, in one count, with keeping a house for the purpose of making or selling books or pools based on racing results *or* betting therein. The statute proscribed a number of different gambling activities in the disjunctive, including making books or betting. We concluded that an indictment based on such a statute "may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction 'and' where the statute has 'or' and it will not be double, and it will be established at the trial by proof of any one of them." *Id.* at 345, 32 A. at 283. By using the *conjunctive*, only one offense would be stated. Pleading those acts in the *disjunctive*, however, made the count duplicitous, for it then charged more than one offense. That view, too, has been confirmed in subsequent cases. *See Jones v. State*, 303 Md. 323, 341, 493 A.2d 1062, 1071 (1985) and cases cited there.

We have never considered the issue now before us, of whether a series of sexual offenses committed at different times over an extended period on the same victim, either directly or through a charge of sexual child abuse based on those same underlying offenses, may be joined in a single count. The closest we came was in *State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985), where the defendant was charged, in a District Court Statement of Charges, with a fourth degree sexual offense. Article 27, § 464C makes it a fourth degree sexual offense for a person to engage in any of three activities: sexual *contact* with another person against the will and without the consent of that person; a sexual *act* with another person 14 or 15 years of age if the person performing the sexual act is four or more years older than the victim; or vaginal intercourse with another person who is 14 or 15 years old if the person performing the act is four or more years older. Boozer was alleged to have committed a sexual *act* with the victim. *Id.* at 100, 497 A.2d 1129.

After the case was transferred to the Circuit Court for jury trial and the jury was sworn (jeopardy thus attaching), the prosecutor realized that his evidence would be that Boozer inserted his fingers into the victim's vagina, which constituted sexual *contact* but not a sexual *act*, as those terms were defined for purposes of the sexual offense laws. He therefore sought to amend the charging document to allege sexual *contact*, and when, on Boozer's objection, that was not allowed, he entered a *nol pros* without Boozer's consent. The State then filed a new charging document alleging a fourth degree sexual offense by means of attempting to have vaginal intercourse with the 14–year old victim. That case, too, was transferred to the Circuit Court where, on Boozer's motion, the charging document was dismissed on double jeopardy grounds. The trial court's rationale was that both acts constituted the same offense.

We disagreed with that conclusion. We noted that, prior to the enactment of § 464C, the conduct grouped together in that section had been separately punishable, even if committed in close temporal proximity. A person who engaged in consensual vaginal intercourse with a 15–year old girl and *then* engaged in anal intercourse with her, and *then* forced an object into her vagina or rectum without her consent could have been convicted and punished separately for all three offenses. The courts had little difficulty, we said, in concluding "that separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in very close proximity to each other and even though they are part of a single criminal episode or transaction." *Boozer, supra,* at 105, 497 A.2d at 1132. We noted the concern expressed in *State v. Frazier,* 185 Conn. 211, 440 A.2d 916, 925 (1981), *cert. denied,* 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982) that a different view "would allow a person who has committed one sexual assault upon a victim to commit with impunity many other such acts during the same encounter." After examining the language, structure, and legislative history of the sexual offense law, of which § 464C was a part, we found no evidence of an intent by the Legisla-

ture "to depart from the well established law of this and other states with respect to a defendant's liability for multiple acts committed against a victim *during a single criminal transaction." Boozer*, 304 Md. at 109, 497 A.2d at 1134 (emphasis added). All of this discussion focused on Boozer's double jeopardy claim.

The issue of duplicity arose from Boozer's argument that use of the abbreviated charging document authorized by § 461C, which permits the State to allege little more than that the defendant committed a sexual offense on the named victim in violation of § 464C (or §§ 464, 464A, or 464B), was inconsistent with the concept of separate offenses because such an indictment would necessarily charge every conceivable offense within the section and would therefore be duplicitous. Because the State had not, in fact, used the abbreviated charging document in the *Boozer* case, that issue was not really before us; as noted, the two charging documents that formed the basis of Boozer's double jeopardy argument alleged specific conduct, which we held to constitute separate offenses. We nonetheless addressed the issue and concluded that use of the abbreviated charging document would not make it duplicitous. Although we cited a Wisconsin case, *State v. Lomagro, supra*, 113 Wis.2d 582, 335 N.W.2d 583 (1983), which had adopted a "one continuing offense" theory to sustain a count alleging several sexual offenses committed by the defendant against an adult victim in the course of one evening, the actual basis for our conclusion seemed to be more a combination of that approach and the one adopted in *Stearns, supra*. We held that "the effect of the use of the short form is to conjunctively charge every crime embraced by the specified section," thereby allowing but one conviction, which could be based on any of the conduct included under the statute. *State v. Boozer, supra*, 304 Md. 98, 112, 497 A.2d 1129, 1136–37. We noted:

"In a case involving two or more criminal acts that have been classified within the same degree of sexual offense (*e.g.* sequential acts of nonconsensual cunnilingus, fellatio, anal intercourse, and penetration of the vagina by an object, *all occurring during the same criminal episode* ) the State

must elect whether to charge each offense separately and specifically, or whether to use the short form. If separate charges are brought there may be separate convictions and punishment, but if the short form is used and a particular offense is not specified there may be but one conviction and punishment for those offenses."

*Id.* at 112–13, 497 A.2d at 1136–37 (emphasis added).

None of the approaches we have hitherto taken support Counts 1 and 2 of the indictment against petitioner. As noted, those counts attempt to charge petitioner with a singular act of sexual offense based on separate incidents of criminal conduct committed on as many as 15 separate occasions extending over a one-year period. They do not, as in *Warren*, allege a single transaction involving multiple victims; the acts charged are not merely descriptive of a singular offense, as was the case in *Jackson*; they were not alleged to be part of one ongoing criminal episode, as in *Mohler*, or part of a common scheme, as in *Horsey*, and they do not simply represent different ways of committing the same offense, as in *Jones* and *Boozer*. The only theory upon which any of the four counts can be held not to constitute duplicitous pleading is an expansive view of the "continuing offense" approach—to allow the State to congregate separate criminal acts, committed not as part of a single ongoing incident but over an extended period of time, to form a singular continuing crime. We believe that the State may do that with respect to the child abuse charge under § 35C, but not with respect to the sexual offenses charged under § 464A or § 464B.

Several States have dealt, in one context or another, with whether, and under what circumstances, separate single-act sexual offenses committed over an extended period can combine to support a single conviction, under a continuing course of conduct or continuing offense theory. Many of those cases did not involve the specific issue raised here, of whether a count attempting to charge one offense consisting of disparate offenses committed over a significant period of time is dismissible for duplicity. Some, like our decision in *State v. Mulkey, supra*, 316 Md. 475, 560 A.2d 24 (1989), concerned the specific-

ity of the indictment—the lack of specific dates—rather than whether a count was duplicitous. *See, for example, State v. Little,* 260 Mont. 460, 861 P.2d 154 (1993); *State v. Hoban,* 738 S.W.2d 536 (Mo.App.1987). Others, reaching the appellate court after trial and conviction, dealt not so much with the validity of the indictment as with whether, when the State alleges a single offense committed during a particular time period but offers evidence of multiple incidents occurring during that period, any of which might suffice to establish the offense, it must elect, either at the beginning or at the end of the case, which incident it intends to proceed upon and the court must then instruct that the verdict must be unanimous as to that incident. *See State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (1984); *State v. Covington,* 711 P.2d 1183 (Alaska Ct.App.1985); *State v. Bell,* 112 Ohio App.3d 473, 679 N.E.2d 44 (1996); *Soper v. State,* 731 P.2d 587 (Alaska Ct.App.1987); *People v. Reynolds,* 294 Ill.App.3d 58, 228 Ill.Dec. 463, 689 N.E.2d 335 (1997); *People v. Castro,* 133 Cal. 11, 65 P. 13 (1901); *People v. Williams,* 133 Cal. 165, 65 P. 323 (1901). In *Baine v. State,* 604 So.2d 258 (Miss.1992), the defendant was initially charged with child molestation occurring over a period of time that began outside the period of limitations but continued well within it. When the defendant moved to dismiss on the theory that the crime was complete when the first act occurred and that prosecution was therefore barred by limitations, the court allowed the State to amend by deleting the period occurring outside the limitations period. The issue before the appellate court was merely whether the trial court erred in allowing the amendment.

There have been cases raising the issue presented here, and there is some split of authority. All of the courts are sympathetic to the plight of both the young victims, often unable to state except in the most general terms when the acts were committed, and of prosecutors, either hampered by the lack of specific information or, when it is reported that the conduct occurred dozens or hundreds of times over a significant period, faced with the practical problem of how to deal with such a multitude of offenses. The courts are all also properly con-

cerned with the rights of defendants, who go to trial with a presumption of innocence, and with the ramifications to them of duplicitous pleading. Some have struck the balance in favor of easier prosecution by allowing *some* bundling of offenses, especially if committed within a reasonably brief period. *See, for example, State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680 (1989) (allowing individual counts to include like offenses committed with a two or three month period); *State v. Generazio,* 691 So.2d 609 (Fla.App.1997); *State v. Dell'Orfano,* 651 So.2d 1213 (Fla.Dist.Ct.App.1995). Others, discerning better ways to deal with those problems, have struck the balance in favor of preserving the rule against duplicitous pleading and have rejected a continuing offense theory when faced with the bundling of single-act sexual offenses in the same count.

In *State v. Saluter,* 715 A.2d 1250 (R.I.1998), the defendant was charged, in a single count, with committing multiple acts of cunnilingus against the young daughter of his girlfriend on a weekly basis over an extended period of time. Holding that count, and others in the indictment like it, to be fatally duplicitous, the Rhode Island Supreme Court reversed the convictions entered on those counts. The court acknowledged the State's suggestion that "reconceptualization of child sexual assault as a continuing course of conduct crime would eliminate duplicity problems in charging these offenses" and recognized that some States had done that, but it concluded that the creation of such a crime was for the legislature, not the court. *Id.* at 1255.

New Hampshire and New York have taken the same approach. In *State v. Patch,* 135 N.H. 127, 599 A.2d 1243 (1991), the State charged the defendant with unlawfully having sexual contact with a minor by "engag[ing] in a course of conduct involving several incidents of intentionally touching and fondling [the victim's penis]" over a six-month period. *Id.* at 1243. Holding the count to be fatally duplicitous, the New Hampshire Supreme Court declared that, "[b]y alleging a 'course of conduct involving several incidents of intentionally touching,' the indictment at issue encompassed more than one

offense." *Id.* at 1244. Each act of sexual contact, it held, constituted a separate felonious sexual assault, and the State could have brought several indictments, each alleging a specific incident, and consolidated them for trial. *See also State v. Paulsen,* 143 N.H. 447, 726 A.2d 902 (1999), confirming that view.

In *People v. Keindl,* 68 N.Y.2d 410, 509 N.Y.S.2d 790, 502 N.E.2d 577 (1986), the New York Court of Appeals drew a distinction between the joining of several separate single-act crimes committed over a period of time and the charging of a single crime that may consist of multiple acts committed over a period of time. The defendant was charged with a variety of sexual offenses committed against each of his three stepdaughters over periods ranging from 10 to 16 months. In one count, he was charged with the first degree sodomy of his 11–year old stepdaughter. Particulars furnished by the State alleged that he committed those acts twice or more a week for about a year. Other counts were similarly structured. He was also charged with three counts of endangering the welfare of a child, each count relating to a separate victim. That offense, in relevant part, consisted of knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of a child under a certain age.

The court began with the proposition that "where a crime is made out by the commission of one act, that act must be the only offense alleged in the count" or "[p]ut differently, acts which separately and individually make out distinct crimes must be charged in separate and distinct counts." *Id.* 509 N.Y.S.2d 790, 502 N.E.2d at 580. Although recognizing that the "continuous crime" theory might be appropriately applied in some cases, the court concluded that it had no applicability to the crimes of sodomy and sexual abuse, which "punish the performance of a single act." *Id.* 509 N.Y.S.2d 790, 502 N.E.2d at 582. In the case before it, the court concluded, there was "such a multiplicity of acts encompassed in single counts as to make it virtually impossible to determine the particular act of sodomy or sexual abuse as to which the jury reached a unanimous verdict." *Id.* Nor, the court held, was there any need for "the profusion of duplicitous counts in this

indictment." *Id.* That approach with respect to the bundling of single-act crimes was confirmed in *People v. Beauchamp*, 74 N.Y.2d 639, 541 N.Y.S.2d 977, 539 N.E.2d 1105 (1989). *See also People v. Algarin*, 166 A.D.2d 287, 560 N.Y.S.2d 771 (1990).

The *Keindl* court reached a different conclusion with respect to the counts charging child welfare endangerment, noting that that offense, "unlike sodomy and sexual abuse, is a crime that by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time." *Id.* 509 N.Y.S.2d 790, 502 N.E.2d at 582. Accordingly, it concluded that the counts charging that crime "based upon a pattern of sexual behavior toward the children over an approximate two-year period, were proper and do not require dismissal." *Id.*

Following the *Keindl* and *Beauchamp* decisions, the New York Legislature enacted a continuing offense crime to deal with the problem. Section 130.75 of the New York Penal Law makes a person guilty of a "course of sexual conduct against a child" if "over a period of time not less than three months in duration, he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact, with a child less than eleven years old." The statute further provides that a person may not be subsequently prosecuted for any other sexual offense involving the same victim unless the other charged offense occurred outside the time period charged under the statute.

California also responded to the problem with a statute. In *People v. Van Hoek*, 200 Cal.App.3d 811, 246 Cal.Rptr. 352 (1988), the defendant was charged with seven counts of lewd and lascivious conduct and one act of sexual intercourse committed against his daughter. The molestation began when the child was three and progressed to the point of five or six incidents of sexual intercourse. The issue before the appellate court was not duplicity in the indictment but rather the victim's failure to specify in her testimony any specific inci-

dent—a failure of proof. Following an older line of California cases, *People v. Castro, supra,* 133 Cal. 11, 65 P. 13, and *People v. Williams, supra,* 133 Cal. 165, 65 P. 323, the court regarded each act as a separate offense and held that testimony that "consisted of a blur of acts, nonspecific as to a particular occasion" could not suffice to sustain a conviction. *Id.* at 817, 246 Cal.Rptr. 352. Almost immediately upon the filing of *Van Hoek,* the California legislature enacted a "continuing sexual abuse" statute, making it a separate crime for a person who resides in the same home with a minor child or who has recurring access to the child to engage, over a period not less than three months in duration, in any of three or more specific kinds of sexual acts proscribed by other sections of the Code. *See* CAL.PENAL CODE § 288.5 (West 2000). The statute provides that, to convict, the jury need unanimously agree only that the requisite number of acts occurred, not on which acts constitute the requisite number. The statute further provides that (1) no other felony sex offense involving the same victim may be charged in a prosecution under the statute unless the offense occurred outside the period charged under the statute or is charged in the alternative, and (2) a defendant may be charged with only one count under the statute unless another charge involves another victim. That statute has apparently solved the problem in California. *See People v. Higgins,* 9 Cal.App.4th 294, 11 Cal.Rptr.2d 694 (1992).

 We, too, are sensitive to the problems faced by prosecutors in these cases. *See State v. Mulkey, supra,* 316 Md. 475, 560 A.2d 24. But forcing a square peg into a round hole is not the answer. There is no rational way to treat a second degree sexual offense, as defined in § 464A, or a third degree sexual offense, as defined in § 464B, as a continuing offense. Section 464A defines a second degree sexual offense as engaging in "a sexual act" with another person under any of the three circumstances stated in the section. Section 464B defines a third degree sexual offense as engaging either in "sexual contact" under the circumstances stated in the section or "a sexual act" or vaginal intercourse with a person 14 or 15

if the perpetrator is at least 21. "Sexual contact" is defined in § 461(f) as "the intentional touching" of the victim's anal or genital areas or other intimate parts for certain purposes. Those offenses are committed when the proscribed act occurs. If they are committed on more than one occasion, other than as part of an ongoing single incident, they cannot be regarded as having been committed but once. We thus aline ourselves with the Rhode Island, New Hampshire, and New York courts and hold that a single count that charges multiple incidents of those offenses, committed other than in the course of a single criminal episode of relatively brief temporal duration, cannot be sustained as non-duplicitous on the theory of a continuing offense. Counts 1 and 2 of the indictment were duplicitous.

Child abuse, as proscribed by § 35C, admits of some greater flexibility. Section 35C(b) provides that a parent, other person who has care, custody, or responsibility for the supervision of a child, or household member "who causes abuse to the child" is guilty of a felony. Section 35C(a)(2) defines "abuse" to mean either (1) the sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act under circumstances that indicate that the child's health or welfare is harmed or threatened, or (2) sexual abuse, whether or not physical injuries are sustained. "Sexual abuse," in turn, is defined to mean "any act that involves sexual molestation or exploitation of a child," including incest, rape, sexual offense, sodomy, and unnatural sexual practice. Petitioner urges that, as so defined, sexual child abuse also is a single-act crime and thus cannot be charged as a continuing offense.

We quite agree with petitioner that a single act, of a type included within the definition of "sexual abuse," may be separately prosecuted and will support a conviction for that offense. The point overlooked by petitioner, however, is that the gravamen of the offense is not the sexual act itself, which is punishable in its own right under other statutes, but rather the abuse of the child. That abuse can as easily arise from several qualifying acts as from one. As we pointed out in

*Nightingale v. State, supra,* 312 Md. at 708, 542 A.2d at 377, a charge of sexual child abuse may be sustained on evidence that would not support a conviction under the sexual offense, rape, sodomy, or perverted practice laws. In the particulars supplied with respect to Count 3, the State alleged a wide range of conduct, from cunnilingus, to digital insertion and attempted penile penetration of the vagina, to touching the victim's buttocks and genitals. With respect to Count 4, the State alleged conduct ranging from the fondling of the victim's breasts to simply rubbing against her. A jury could certainly find a single incident of some of that conduct to constitute abuse under § 35C, but it might well require more than one incident of other conduct in order to find the requisite "sexual molestation or exploitation." [1] Abuse, as defined in § 35C is thus a crime that can be committed both by a single act and through a continuing course of conduct consisting of multiple acts. As supplemented here, Counts 3 and 4 are not duplicitous.

### Should The Rule Against Duplicity Be Applied To Counts 1 and 2

As an alternative to its contention that Counts 1 and 2 are not duplicitous because the offense charged in them is a continuing one, the State argues that we should not regard them as fatally duplicitous because (1) there is a special need in sexual offense cases such as this to excuse strict compliance with the prohibition against duplicitous pleading, and (2) all of the concerns that underlie that prohibition can be satisfied in other ways. As to the second prong of the argument, the State limits its consideration to three underlying concerns—

---

1. As an example, § 461(f) of Article 27 includes within the definition of "sexual contact" the intentional touching of the victim's anal or genital areas or other "intimate parts" for the purpose of sexual arousal or gratification. Whether the touching of a person's "buttocks" would suffice as sexual contact is not clear. It might, however, depending on the circumstances, constitute sexual molestation or exploitation, even if it did not constitute sexual contact. The same situation could arise from "rubbing against" the victim.

reasonable notice of the charges, an assurance of jury unanimity, and double jeopardy.

The first of these concerns, the State avers, was addressed and resolved in *State v. Mulkey, supra,* 316 Md. 475, 560 A.2d 24. That is not so. Mulkey was charged with one count of child abuse and, in each of 12 other counts, a specific sexual offense against a child. The offenses were allegedly committed over three successive summers, and each of the 12 sexual offense counts charged but one offense, but gave a three-month time frame (June 1 through September 3, 5, or 6) for its commission. Mulkey moved to dismiss on the ground that the counts did not state with reasonable particularity the times and places of the offenses, and he also moved for particulars seeking that information. The Circuit Court dismissed the indictment and thus declared the request for particulars moot.

We reversed. We first held that there was no Constitutional violation, in that the time of the alleged offenses was not an essential element, that Mulkey was apprised of the continuing nature of the offenses, and that his defense was not prejudiced. We then determined that there was no violation of the "reasonable particularity" requirement of Maryland Rule 4–202(a). In that regard, we declared:

"In a sexual offense case involving a child victim, the trial court's determination as to how 'reasonably particular' a charging document should be as to the time of the offense should include [among other things] the following relevant considerations: 1) the nature of the offense; 2) the age and maturity of the child; 3) the victim's ability to recall specific dates; and 4) the State's good faith efforts and ability to determine reasonable dates."

*Id.* at 488, 560 A.2d at 30.

We finally concluded that the trial judge should have granted the motion for particulars and considered the information supplied in response to it, and that dismissal of the indictment was premature.

*Mulkey* neither addressed nor resolved the problem of reasonable notice apparent in this case. As noted, each of the 12 counts in *Mulkey* charged only one offense—one act—the problem being simply when during the three-month period it was committed. That is not what is at issue here. Petitioner has been charged with committing either the same act—cunnilingus—or a range of conduct up to 15 times during a year period. It is not a matter of when "the" act was committed but of "which" act (or acts) was committed.

At oral argument, the State adopted the view of the Court of Special Appeals that the underlying concerns over jury unanimity and double jeopardy could be resolved by either forcing the State, at the conclusion of trial, to select one act as constituting the offense and taking a verdict only on that incident, or, through an instruction of some kind, requiring the jury to reach unanimity on only one incident. As noted in our discussion above, some courts have looked to those devices to save prosecutions based on duplicitous indictments. There are a number of problems with that approach, however. Requiring the State, at the *end* of the case, to select only one incident as the unit of prosecution is a most inefficient way of dealing with the duplicity issue. The trial in such a setting would be consumed with evidence relating to *all* of the incidents charged—evidence that, in the end, may have been not only unnecessary but possibly irrelevant and inadmissible. Apart from the tactical advantage gained from the possible poisoning of the jury with this extraneous evidence, the State would be in no better position from having to choose its unit of prosecution at the end of the case than if it had to make that choice, as the duplicity rule requires, at the beginning.

For much the same reason, a jury instruction on unanimity may not suffice as an acceptable substitute for simple compliance with the long-established pleading requirement. Rather than hearing evidence of only one offense committed during a particular period, the jury would hear evidence of several such offenses. Even if it is told to focus only on one, the risk of a compromise verdict in such a situation—the problem noted in *Weinstein v. State, supra*, 146 Md. 80, 125 A. 889, of the jury

returning a verdict of guilty as to one incident, even though there is no real unanimity as to that incident, as an alternative to requiring a verdict of acquittal—is far greater if the jury has heard evidence of several offenses committed at different times during the period. *Cf. Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989). That risk, of course, raises the host of problems we discussed earlier.

Finally, we must keep in mind that the prohibition against duplicitous pleading is a broad one; it applies not just to offenses against children but to all criminal and civil pleading. If we were to begin carving out judicial exceptions to the prohibition, on a case-by-case basis, how would we define them, where would we draw the line, and what alternative protective devices would we mandate in each instance? New York and California attempted to deal with the problem by statute, allowing the legislative branch, after public hearings, to weigh all of the competing interests and concerns and strike a proper balance. That avenue, of course, is open in Maryland. We shall not, judicially, excuse compliance with the long-standing and well-founded prohibition against duplicitous pleading.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM ORDER OF CIRCUIT COURT FOR CHARLES COUNTY DISMISSING COUNTS 1 AND 2 OF THE INDICTMENT AS DUPLICITOUS AND TO REVERSE ORDER OF CIRCUIT COURT DISMISSING COUNTS 3 AND 4. COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID ½ BY PETITIONER AND ½ BY CHARLES COUNTY.