[Cite as *State v. Bowling*, 2015-Ohio-360.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2014-01-017 |
| | : | O P I N I O N |
| - vs - | | 2/2/2015 |
| | : | |
| WALTER D. BOWLING, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-05-0770

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}  Defendant-appellant, Walter D. Bowling, appeals from his conviction in the Butler County Court of Common Pleas for gross sexual imposition.  For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2}  On May 22, 2013, a grand jury indicted Bowling.  Relevant to this appeal, Bowling was charged with committing gross sexual imposition and rape against D.K. who is now 37 years of age.  The abuse allegedly occurred when the victim was under 13 years of

age. Bowling was charged with gross sexual imposition as an ongoing and continuing course of criminal conduct that occurred on or about 1982 through 1986. Bowling was also charged with rape as an ongoing and continuing course of criminal conduct that occurred on or about 1988 through May 12, 1989.

{¶ 3} Bowling filed two motions to dismiss the indictment because it was duplicitous and the statute of limitations had expired. At the hearing on Bowling's motions, the victim testified that when she was about nine or ten years old an investigation was conducted by children services into allegations made by the victim's sister regarding sexual contact by Bowling. A social worker interviewed the victim as a part of the investigation into Bowling's conduct with her sister. When interviewed, the victim denied that anything inappropriate had happened between her and Bowling. The victim testified that Bowling had threatened to kill her if she said anything to the social worker about his conduct.

{¶ 4} Regarding Bowling's sexual contact with the victim, the victim testified that she told her grandmother about Bowling's conduct, who in turn made her tell her mother, but children services was never contacted. The victim testified she did not mention the allegations to anyone else until she talked to a detective in 2012. The trial court overruled both motions to dismiss. The trial court found that the Twelfth District had clearly held that indictments involving child sex abuse cases are not duplicitous. Furthermore, the trial court found that the statute of limitations had not expired.

{¶ 5} The case proceeded to a jury trial. At trial, the victim testified that Bowling, her adoptive father, inappropriately touched her a couple times per week beginning when she was approximately six years old. The victim further testified that that the inappropriate touching of her private areas, including her breasts and vagina, progressed to intercourse when she was nine or ten years old. The victim testified that the intercourse occurred in a tent at an Ohio state park and also in her bedroom at their Hamilton, Ohio, residence.

{¶ 6} After hearing the evidence, the trial court instructed the jury that they must consider each count and evidence separately. Specifically, the trial court stated: "This being a criminal case, before it can be said that you reached a verdict, it is necessary for all 12 jurors to agree – all 12 member of the jury to agree upon a verdict * * *." The court then went through the requirement for all 12 jurors to sign the verdict form for each count.

{¶ 7} The jury found Bowling guilty of gross sexual imposition as charged in the indictment and not guilty of rape as charged in the indictment, but guilty of the lesser included offense of gross sexual imposition. Bowling was deemed a sexually oriented offender and sentenced to three years in prison on each count to be served consecutively.

{¶ 8} Bowling now appeals and asserts three assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} PROSECUTION OF [BOWLING] FOR THE VIOLATIONS ALLEGED IN COUNTS ONE AND TWO WAS BARRED BY THE STATUTE OF LIMITATIONS, R.C. 2901.13.

{¶ 11} Bowling argues that his convictions should be vacated because the applicable statute of limitations for his charges had passed. Bowling asserts that because the victim talked to a children services worker and told several adults, including her grandmother and mother, when she was a child about the abuse by Bowling, the statute of limitations began to run prior to when the victim reached the age of majority.

{¶ 12} Effective March 9, 1999, the General Assembly amended R.C. 2901.13 to provide a 20-year time period within which to prosecute an offender for certain felony offenses, including gross sexual imposition. R.C. 2901.13(A)(3)(a). An offender is subject to prosecution under the amended version of R.C. 2901.13 if the six-year statute of limitations pursuant to the previous version of R.C. 2901.13 had not expired as of March 9, 1999. *State v. Rogers*, 12th Dist. Butler No. CA2006-03-055, 2007-Ohio-1890, ¶ 8-9. "With respect to

sex offenses involving children, the statute of limitations is tolled until the victim reaches the age of majority, where the corpus delicti of the offenses has not previously been discovered by a responsible adult as listed in R.C. 2151.421." *State v. Ashcraft*, 12th Dist. Butler No. CA2008-12-305, 2009-Ohio-5281, ¶ 31, citing *State v. Hughes*, 92 Ohio App.3d 26, 29 (12th Dist.1994); R.C. 2901.13(F). Notably, the Ohio Supreme Court has specifically declined to add parents to the list of responsible adults set forth in R.C. 2151.421 to trigger the statute of limitations. *State v. Hensley*, 59 Ohio St.3d 136, 141 (1991).

{¶ 13} Bowling contends that his prosecution for rape and gross sexual imposition are time-barred because the statute of limitations was triggered when children services became involved in the mid-1980s. In *State v. Ritchie*, 95 Ohio App.3d 569 (12th Dist.1994), we found that a responsible adult was informed of sexual abuse that triggered the start of the statute of limitations when a babysitter reported to children services graphic and specific allegations of sexual abuse made by a five-year-old child against his father. As a result, children services interviewed the five-year-old victim and two siblings who all denied any abuse. *Id.* at 570. Subsequently, children services found the abuse unsubstantiated. *Id.* When a case was brought more than seven years later, we found that the charges of sexual abuse were time-barred as the six-year statute of limitations had expired prior to the amendment changing the applicable statute of limitations to 20 years based on the babysitter's graphic report of abuse of the victim to children services. *Id.* at 571.

{¶ 14} In the case at bar, the victim was born on May 12, 1976, and reached the age of majority on May 12, 1994. The victim testified that she never told anyone about the sexual abuse, except for her grandmother who made her tell her mother, until she spoke to a detective in 2012.[1] Neither a grandparent nor a parent is listed as a responsible adult for the

_____

1. When the victim was 15 years of age, she moved out of the residence she shared with her mother and Bowling and moved in with her older sister. There is some discrepancy as to when the older sister knew about

purpose of reporting child abuse or neglect in R.C. 2151.421.

{¶ 15} Regarding a previous investigation by children services, the investigation was prompted by an allegation against Bowling regarding the victim's sister. While children services interviewed the victim as a part of the investigation into the sister's alleged abuse, the victim denied that she was abused by Bowling. At the time, children services had no reason to believe that the victim had actually been abused. Consequently, no responsible adult had been informed of the abuse prior to the victim reaching the age of majority. As such, the six-year statute of limitations began to run when the victim reached the age of majority in 1994 and did not expire prior to the 1999 amendment changing the applicable time period to 20 years. Bowling was indicted on May 22, 2013, which is within 20 years of the victim attaining the age of majority. Accordingly, the charges were timely filed. As his prosecution was not barred by the statute of limitations, Bowling's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} COUNTS ONE AND TWO CONTAINED DUPLICITOUS CHARGING IN VIOLATION OF CRIM.R. 8(A), IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART.1, SECTION 5 AND 10 OF THE OHIO CONSTITUTION.

{¶ 18} In his second assignment of error, Bowling argues that the charges were duplicitous because single, multiple acts were charged as one offense committed as a continuing course of conduct. Specifically, Bowling asserts that because the charges were duplicitous his rights, including notice, jury unanimity, and protection against double jeopardy,

---

the situation. In any event, a sibling is not a responsible adult for the purpose of reporting child abuse or neglect under R.C. 2151.421.

were violated.[2]

{¶ 19} We addressed almost identical arguments in previous cases. *See State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, *appeal not accepted*, 136 Ohio St.3d 1476, 2013-Ohio-3790; and *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.), *appeal not accepted*, 132 Ohio St.3d 1514, 2012-Ohio-4021.

{¶ 20} In *Birt*, the defendant argued both the indictment and charging were duplicitous such that several of his constitutional rights were violated. *Birt* at ¶ 10. The defendant asserted that the indictment against him was duplicitous because it charged him with committing "multiple, separate alleged sexual acts under a single count." *Id.* The defendant contended that duplicitous charging occurred at trial because the state presented evidence of "multiple alleged acts of sexual conduct, spanning approximately six to seven years, two counties, and three separate residences" to prove single counts. *Id.*

{¶ 21} Similarly, in *Blankenburg*, the defendant argued that he faced a duplicitous indictment as "[m]ultiple acts of sexual misconduct were conflated into single counts" and that duplicitous charging occurred as the state "introduced evidence of multiple acts of sexual misconduct to prove single counts." *Blankenburg* at ¶ 7. We disagreed with the defendants in both *Birt* and *Blankenburg* and found that the indictments were not duplicitous and that the manner in which the evidence was presented at trial did not prejudice them. *Id.* at ¶ 33; *Birt* at ¶ 12.

{¶ 22} In line with our *Birt* and *Blankenburg* decisions, we find that the indictment and the charging in Bowling's case were not duplicitous. Each count contained only one offense.

---

2. While not specifically identified, it appears that Bowling is arguing both duplicity in the indictment and duplicity in the charge. Duplicity in the indictment, the more common form of duplicity, occurs when two or more distinct offenses are joined in a single count. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.), *appeal not accepted*, 132 Ohio St.3d 1514, 2012-Ohio-4021 (Ringland, R., concurring in part and dissenting in part). Duplicity in the charge, on the other hand, exists when an indictment refers to but one criminal act when multiple acts are then introduced at trial to prove the charged offense. *Id.*

Count One alleged gross sexual imposition and Count Two alleged rape. Moreover, the victim described the approximate time frame, location, and sex act for each incident as described in the bill of particulars. In reviewing the indictment and the record at trial, we are not convinced that the manner in which Bowling was indicted or the evidence that was presented prejudiced him in any way.

{¶ 23} With regards to Bowling's specific arguments related to notice, we note that in *Birt* we found that the state adequately delineated between counts such that the defendant was provided adequate notice of the charges against him. *Birt* at ¶ 12. Likewise, in this instance, the state delineated between the count of gross sexual imposition and rape such that Bowling was provided adequate notice of the charges against him. The indictment included the specific and separate time frame in which the sex offense allegedly occurred. Thereafter, the bill of particulars contained a detailed basis for each count in the indictment. The bill of particulars outlined the specific location, the sex act that occurred, and the victim's name.

{¶ 24} In *Blankenburg*, we stated that we did not have concerns with juror unanimity. *Blankenburg* at ¶ 22. There, we held that when an indictment alleges that a child victim was molested intermittently within a specified time period even when the exact date of each molestation is unknown, the jury must believe or disbelieve testimony regarding a pattern of conduct. *Id.* As in *Blankenburg*, in this instance, juror unanimity was reached regarding a pattern of conduct involving sexual abuse of a child.

{¶ 25} Additionally, we rejected arguments concerning double jeopardy in *Blankenburg*. We found no double-jeopardy issues when an indictment "differentiated the counts by the type of offense alleged and the time period, and therefore the accused [is] protected against a subsequent prosecution for the same conduct." *Blankenburg* at ¶ 28. In the case at bar, Count One of Bowling's indictment alleged gross sexual imposition occurred

on or about 1982 through 1986 and Count Two of Bowling's indictment alleged rape occurred on or about 1988 through 1989. Consequently, the indictment differentiated the counts by type of the offense and time period, and thus Bowling is protected from subsequent prosecution on the same conduct.

{¶ 26} In light of the foregoing, we continue to follow our precedent established in *Birt* and *Blankenburg* and find that the indictment and the manner which the evidence was presented in Bowling's case were not in error.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN FAILING TO PROVIDE A MORE SPECIFIC UNANIMITY INSTRUCTION TO JURORS.

{¶ 29} Bowling asserts that the trial court erred by only giving a general jury instruction. Bowling argues that specific instructions should have been given advising the jurors that they must reach unanimous agreement that he committed one act among multiple acts as alleged in the indictment and testified to at trial in order to convict him. Bowling argues that he was prejudiced without such specific instructions because it is impossible to determine the act upon which the jurors reached unanimity to convict him of two counts of gross sexual imposition.

{¶ 30} We first note that Bowling did not object to the jury instructions at the time they were given. As such, plain error is the proper standard of review. Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Craycraft*, 12th Dist. Clermont Nos. CA2009-02-013 and CA2009-02-014, 2010-Ohio-596, ¶ 23. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 12th Dist. Warren No. CA2013-12-118, 2014-Ohio-3558, ¶ 38. Therefore, we will not reverse the trial court's decision unless the

outcome of trial would have been different but for the alleged error. *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 53.

{¶ 31} "[A] general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *State v. Johnson*, 46 Ohio St.3d 96, 104 (1989). "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* While there are exceptions to this general rule as outlined in *Johnson* and in *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, we found in *Blankenburg* that juror unanimity is not a concern when a case involves sexual abuse perpetrated against a minor and the jury believes that a pattern of conduct of sexual abuse occurred.

{¶ 32} In this instance, a general juror unanimity instruction was given. As the jury was only required to believe or disbelieve a pattern of conduct of sexual abuse occurred, the trial court was not required to provide instructions compelling the jury to agree on the specific incidents they believed established gross sexual imposition for the years indicated in the indictment. *See State v. Ambrosia*, 67 Ohio App.3d 552, 561 (6th Dist.1990) (finding an instruction compelling the jury to agree as to the date, time, or events in child rape case would have been erroneous as the jury was only required to find the victim's testimony true to find defendant guilty of raping the victim over a period of years as alleged in the indictment). As such, a specific jury instruction was not necessary. Consequently, the trial court did not err, let alone commit plain error, in giving a general unanimity jury instruction. Bowling's third assignment of error is overruled.

{¶ 33} Judgment affirmed.

PIPER, J., concurs.

- 9 -

RINGLAND, P.J., concurs in part and dissents in part.

**RINGLAND, P.J., concurring in part and dissenting in part.**

{¶ 34} I concur in the majority's analysis and resolution of Bowling's first assignment of error. I dissent, however, with the majority's decision regarding Bowling's second and third assignments of error. I dissent because the majority does not follow the Ohio Supreme Court case *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, to ensure the jury returned a unanimous verdict. Furthermore, I dissent because the majority improperly allows a continuing course of conduct as an element in the indictments involving sex crimes.

{¶ 35} The principles discussed by the Ohio Supreme Court in *Gardner* regarding jury unanimity in the context of a burglary charge are similar in theory to issues in the case at bar regarding duplicity and jury instructions. In *Gardner*, the court provided substantial guidance as to the standard needed to ensure jury unanimity based on whether the offense charged is classified as being committed through alternative means or multiple acts.[3] In a case involving alternative means, when a single offense may be committed in more than one way, jury unanimity is not required as to the means by which the crime was committed so long as substantial evidence supports each alternative means. *Gardner* at ¶ 49. Conversely, in multiple acts cases, where several acts are alleged and any one of them could constitute the crime charged, jury unanimity is required as to which act or incident constitutes the crime. *Id.* at ¶ 50. The Court stated:

> To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of

_____

3. I recognize that while *Gardner* sheds light on how the Ohio Supreme Court may address the issues of juror unanimity and duplicity in multiple acts cases in the future, it is not binding as *Gardner* dealt with a crime committed by alternative means and is a plurality opinion. *See State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 6. Consequently, I urge the Ohio Supreme Court to reexamine how it wishes to consider juror unanimity and duplicity in regard to multiple acts cases.

them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Id.*

{¶ 36} The case at bar is a multiple acts case as the facts reveal a number of sexual acts occurred over a period of time and any one of them could have constituted the crimes charged in two separate counts. Accordingly, *Gardner* either required the state to elect a particular criminal act to pursue or a specific jury instruction. By electing one criminal act to pursue, multiple acts would not have been used to prove a single offense, and as such, issues surrounding duplicity in the charge would have been prevented. By giving a specific jury instruction, issues surrounding a general jury instruction would have been resolved. With either scenario, jury unanimity would have been guaranteed.

{¶ 37} Moreover, due process requires that the state prove each element of an offense beyond a reasonable doubt. *See, e.g., Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319 (1977). I wrote separately in a similar case, *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.), *appeal not accepted*, 132 Ohio St.3d 1514, 2012-Ohio-4021. In *Blankenburg*, the defendant was charged with multiple counts of a variety of sex offenses allegedly committed against several minor children. *Blankenburg* at ¶ 10-13. The offenses were charged as a continuing course of conduct. *Id.* In my separate opinion concurring with the majority, I stated that no rational trier of fact could have entertained reasonable doubt as to which of the alleged sex acts actually occurred based on the non-conflicting general testimony of the victims. *Id.* at ¶ 141. In the case at bar, however, there was specific testimony from the victim regarding the approximate time and location of multiple sex acts that require a unanimous verdict as to each count. By the state failing to elect which offense to pursue and the failure of the trial court to give specific jury unanimity instructions, it is impossible to determine for which crime the state proved each element

beyond a reasonable doubt.

{¶ 38} Furthermore, I dissent with the majority because I disagree with their premise that sex offenses against children include a continuing course of conduct as an element of the charge. As I stated in *Blankenburg,* "[t]his premise is contrary to the law in Ohio, detracts from the analysis of duplicity, and minimizes, if not compounds, the potentially deleterious effect of duplicity and multiple offenses within each charge." *Blankenburg* at ¶ 144.

{¶ 39} It is generally recognized that sex offenses are not permitted to be charged as a continuing course of conduct. *See* Lafave, Isreal, King & Kerr, *Criminal Procedure*, Section 19.3(c) (3d Ed.2007). Nearly every state that has addressed this issue has ruled that sex offenses by their very nature are single-act crimes and to pursue such offenses as a continuing course of conduct requires the legislature to amend the statutory framework. *See Cooksey v. State*, 359 Md. 1, 752 A.2d 606 (2000); *State v. Saluter*, 715 A.2d 1250 (R.I.1998); *State v. Patch*, 135 N.H. 127, 599 A.2d 1243 (1991); *People v. Keindl*, 68 N.Y.2d 410, 509 N.Y.S.2d 790 (1986).

{¶ 40} In Ohio, the General Assembly has expressly provided for numerous continuing-course-of-conduct crimes. *E.g.*, R.C. 2913.61 (theft offenses); R.C. 2923.32(A) (engaging in "pattern of corrupt activity"); R.C. 2903.15(A) (permitting child abuse "for a prolonged period"); R.C. 2903.211(A) (menacing by stalking by "engaging in a pattern of conduct"); and R.C. 2919.22(B) (endangering children by parties who "repeatedly administer unwarranted disciplinary measures"). The General Assembly has specifically stated that no conduct constitutes a criminal offense against the state unless it is defined as an offense in the Ohio Revised Code. R.C. 2901.03(A). There is no language contained in R.C. 2907.02 for rape or for other sex offenses that expressly or implicitly indicates that these offenses can be charged as a continuing course of conduct. As such, I disagree with the majority's opinion allowing sex offenses against children to be charged as a continuing course of conduct and

defer to the General Assembly to make changes to the statutory framework to permit such charging.

{¶ 41} In light of the foregoing considerations, I would have sustained Bowling's second assignment of error regarding duplicity. I also would have sustained Bowling's third assignment of error regarding jury instructions. Accordingly, I dissent with the majority's opinion overruling Bowling's second and third assignments of error.