[Cite as *State v. Grisham*, 2014-Ohio-3558.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-12-118 |
| | : | O P I N I O N |
| - vs - | | 8/18/2014 |
| | : | |
| RODNEY L. GRISHAM, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13 CR 29304

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Rodney Grisham, appeals his convictions and sentence in the Warren County Court of Common Pleas for having weapons under disability and possession of drugs.

{¶ 2} On a late afternoon in July 2013, Kings Island security was informed of suspicious activity, and that a man, who was later identified as Grisham, had made

"inappropriate contact" with a child. Detective Toni Hoelke of the Mason Police Department was working a security detail at Kings Island that day, and received a complaint from the child's father that Grisham had made "inappropriate contact" with his two-and-a-half-year-old child while waiting in line for a ride and after Grisham had ridden the ride.

{¶ 3} The child's father told security that he and his family were waiting in line for a ride, and that Grisham was waiting for the same ride, ahead of them in line. When the customers moved forward through the serpentine-shaped line, Grisham would come into contact with the family. The child's father told security that while they waited in line, Grisham reached out and attempted to play with the child by placing his sunglasses on the child's head or letting the child hold his sunglasses. After standing in line and eventually boarding the ride, the father left the two-and-a-half-year-old child with the child's cousin at the end of the ride.

{¶ 4} Once Grisham disembarked the ride, he approached the cousin and young child, who were waiting for their family to get off of the ride. Grisham reached out his arms as if to hold the two-and-a-half-year-old child, and then placed his sunglasses on the young child's head. Witnesses told security that when Grisham reached out to hold the child, Grisham told the cousin "it's ok, I know" the child. When Grisham noticed that the ride was over and the car carrying the child's father was coming back to change riders, Grisham left the scene. Once the father and other family members exited the ride, the cousin explained to the father what had happened with Grisham, and the father immediately reported the incident to Kings Island security.

{¶ 5} The father was able to identify Grisham from photographs taken by a camera at the ride where the incident occurred. Kings Island security then confirmed with the cousin that the picture of Grisham was the same person as the man who had attempted to hold the young child, and the cousin confirmed Grisham's identity from the photograph. Kings Island

security then broadcast Grisham's description, and two security officers stopped Grisham based upon his matching the description. Grisham agreed to come to the Kings Island security office, and was not handcuffed or restrained in any manner.

{¶ 6} Detective Hoelke met with Grisham in an interview room in the security office. The door to the room remained unlocked, and at no point was Grisham placed in restraints of any kind. Detective Hoelke immediately advised Grisham of his *Miranda* rights, and went over a written form with Hoelke that explained his right to remain silent and his right to have an attorney during questioning. Grisham agreed to talk to Detective Hoelke, and voluntarily engaged in the interview that lasted approximately two hours and twenty minutes.

{¶ 7} During the interview, Detective Hoelke specifically questioned Grisham based on her suspicion of attempted child enticement or child abduction. Grisham admitted during the interview that he was a convicted felon, and also admitted that he had a shotgun in his semi-truck, which was parked in the Kings Island parking lot. Detective Hoelke noticed that anytime Grisham spoke about children, he became "extremely excited" and also spoke freely about the places he had been and past interactions he had with security or law enforcement that also involved his suspicious conduct toward children. For example, Grisham discussed being at a mall in Wichita, Kansas, and sitting at a bench in front of a boutique when a young child climbed up in his lap and laid down. Grisham stated that he informed mall security that the child had climbed into his lap and that mall security informed him that the child had been reported missing from the boutique.

{¶ 8} Grisham also admitted to having videotaped children at Kings Island that day using sunglasses that had the capability to videotape unsuspecting persons. Grisham stated that he taped a young child who was dancing with a Kings Island employee who was dressed as Snoopy. Grisham also stated that he taped a young girl who was running and playing around the Eiffel Tower attraction. Grisham stated that he would download the images from

the camera in his sunglasses onto his laptop, but that he would delete the images of children unless the parents had given him permission to keep the image or post it onto YouTube.

{¶ 9} Detective Hoelke expressed her suspicion that Grisham may have child pornography in his possession after Grisham spoke about the laptop computer he kept in his semi-truck. Grisham gave Detective Hoelke consent to go into his semi-truck and remove the shotgun he had inside, as well as make copies of all electronic recordings and the hard drive from his laptop.

{¶ 10} Detective Hoelke eventually led Grisham to the parking lot, and frisked him before they reached Grisham's semi-truck. Grisham did not have any weapons or contraband on his person, but he did possess a season pass to Kings Island, though he specifically told Detective Hoelke that he did not possess such a pass. By the time Detective Hoelke and Grisham reached his semi-truck, other officers were on the scene, including Officer Michael Bishop, a canine handler, and his canine partner, Major. Major alerted to the presence of drugs while walking around Grisham's semi-truck.

{¶ 11} Detective Hoelke then entered Grisham's semi-truck and immediately smelled an odor of burnt marijuana on the passenger side of the semi-truck. Officer Bishop also smelled burnt marijuana and noticed "very small pieces of what appeared to be a green leafy substance" in the cracks and crevices of the semi-truck's floorboard. Although no marijuana was recovered from Grisham's truck, officers seized Vicodin pills for which Grisham did not have a prescription. Officer Bishop also seized a loaded shot gun, and two loaded pistols from the cabin of Grisham's semi-truck, as well as a "large amount of ammunition."

{¶ 12} In addition to the smell of burnt marijuana, Detective Hoelke also observed that Grisham possessed police hats, "long knives like machetes," digital media devices, cameras, laptops, tablets, and other electronic storage devices. Given that Grisham had given consent to seize only his laptop computer and weapons, Detective Hoelke decided to seek a warrant

in order to search and seize the remaining items in Grisham's semi-truck, as she did not know the extent of what was hidden therein.

{¶ 13} Detective Hoelke procured a search warrant the next day, and the officers performed a more detailed search of Grisham's semi-truck. While additional items such as knives, a stun gun, a set of lock picks, mace containers, and red and blue dash lights were seized, nothing seized from Grisham's truck contained child pornography or any illegal images.

{¶ 14} Grisham was charged with single counts of having weapons under disability and possession of drugs. During the arraignment, Grisham was served with an indictment that charged having weapons under disability and possession of drugs. However, the trial court's entry of arraignment lists the charges as having weapons under disability and possession of drug paraphernalia. Grisham pled not guilty to the charges, and later filed a motion to suppress the statements he made during his interview with Detective Hoelke, as well as the weapons and Vicodin seized from his semi-truck.

{¶ 15} The trial court held a hearing on Grisham's motion to suppress, during which, Detective Hoelke and Officer Bishop testified. The trial court overruled Grisham's motion, and the matter was set for trial. Before the trial was scheduled to begin, Grisham pled no contest to having weapons under disability and possession of drugs. After a full colloquy on the matter, the trial court found Grisham guilty on both counts.

{¶ 16} The trial court ordered a presentence investigation, and held a sentencing hearing. The trial court sentenced Grisham to three years for the having weapons under disability charge, which was a maximum sentence, as well as nine months on the possession of drugs charge. The trial court ran the sentences concurrently for an aggregate sentence of three years. Grisham now appeals his convictions and sentence, raising the following assignments of error.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED BY NOT SUPPRESSING EVIDENCE THAT WAS RECEIVED AS A RESULT OF AN ILLEGAL STOP, ARREST, OR DETENTION.

{¶ 19} Grisham argues in his first assignment of error that the trial court erred in denying his motion to suppress.

{¶ 20} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 21} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. It is well-established that a police officer may briefly stop and detain an individual without an arrest warrant or probable cause for an arrest in order to investigate the officer's reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868 (1968). If during the initial detention, an officer ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual. *State v. Robinette*, 80 Ohio St.3d 234, 241 (1997). Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

*State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

**{¶ 22}** In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *State v. Smith*, 12th Dist. Warren No. CA2012-03-022, 2012-Ohio-5962, ¶ 14, quoting *State v. Troutman*, 3d Dist. Marion No. 9-11-17, 2012-Ohio-407, ¶ 25. Therefore, determining whether the officer's actions were justified depends upon the totality of the circumstances, which must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87(1991).

**{¶ 23}** The record indicates that police first became aware of Grisham's activity when the father of the child Grisham tried to hold and make physical contact with reported Grisham's inappropriate conduct. Once Grisham was identified and located within Kings Island, Grisham agreed to come to the security office and was expressly told of his right to remain silent and his right to counsel. Grisham waived those rights, and he does not challenge that anything about the issuance of *Miranda* was in violation of his rights.

**{¶ 24}** Instead, Grisham argues that speaking to the child and trying to hold the child outside the presence of the child's parents was not inappropriate behavior and did not give rise to reasonable suspicion of criminal activity that warranted a valid prolonging of his initial detention. Grisham argues that "somewhere off in our not too distant history, kind grandmothers and grandfathers handed out wisdom to neighborhood children. * * * 'It takes a village' has no [sic] evidentially become 'don't talk to my child.'" Despite Grisham's framing of the issue as activity that was purely innocent, if not nostalgic, we find that the stop and investigation were proper.

**{¶ 25}** The record is clear that Grisham never denied that he had several interactions

with the young child both before and after the child's family rode the ride. Grisham admitted to making contact with the child while waiting in line for the ride by allowing the child to play with his sunglasses and placing his sunglasses on the child's head. Grisham also told Detective Hoelke that he saw the young child and the cousin after he had gotten off of the ride, and had hoped to entertain the young child while the child's family was on the ride by placing his sunglasses on the child's head and kneeling down to be on the same level as the child and cousin.

{¶ 26} Grisham spoke to Detective Hoelke and admitted to wearing sunglasses that secretly recorded unsuspecting persons, and that he had used such sunglasses to record children at the park that day. Grisham taped one child dancing with Snoopy, and one child running and playing near another park attraction. Grisham also admitted to having other interactions with security or police officials specific to his inappropriate conduct toward children, one that involved a child crawling into his lap that had been reported as missing.

{¶ 27} During the motion to suppress hearing, Detective Hoelke testified that whenever Grisham spoke about his interactions with children during his interview, he became excited. Often times, Grisham laughed, smiled, and sped up his pace of speaking when he spoke about children in general, or about his interactions with children in the past. Also, during the interview, Grisham admitted that he is entertained by children playing, though he stated he is not sexually aroused by children.

{¶ 28} This court has viewed the video recording of the interview between Detective Hoelke and Grisham, and we agree that Grisham's statements, reasonable inferences from those statements, demeanor, and mannerisms were disturbing and gave rise to suspicion that Grisham could possibly have been involved in crimes against children. Nothing in Grisham's statements or behavior dispelled such suspicion. Moreover, Grisham's statements that he was a convicted felon and that he possessed firearms in his semi-truck gave officers

probable cause to believe that a crime was most certainly afoot.

{¶ 29} This evidence, when viewed through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold, constituted reasonably articulable facts giving rise to a suspicion of criminal activity. Therefore, Detective Hoelke was warranted in continuing to hold Grisham and investigate further.

{¶ 30} Detective Hoelke asked for Grisham's consent to search the semi-truck, and Grisham gave his consent for Detective Hoelke to seize his computer and weapons. Detective Hoelke then secured a valid search warrant to continue the search, and properly seized the items Grisham had not given his consent to seize. None of Grisham's rights were violated in the process.

{¶ 31} Grisham also asserts that Detective Hoelke lacked probable cause to arrest him. We disagree. In order to arrest a person without a warrant, an officer must have probable cause. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964). The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. *Id.* A probable cause determination is based upon the totality of the facts and circumstances. *State v. Oglesby*, 12th Dist. Clinton No. CA2004-12-027, 2005-Ohio-6556, ¶ 17.

{¶ 32} The record is clear that Grisham told Detective Hoelke that he was a convicted felon and that he possessed a shotgun in his truck. Although Detective Hoelke first investigated Grisham in regard to Grisham's inappropriate behavior toward the child, the circumstances of her investigation changed to include the offense of having weapons while under disability once Grisham admitted to being a felon and to possessing a firearm in his semi-truck. As much, Detective Hoelke had the requisite probable cause to arrest Grisham

because the facts and circumstances within her knowledge were sufficient to warrant a prudent individual in believing that Grisham had committed or was committing an offense.

{¶ 33} Having found that the initial stop, the resulting investigation, the search and seizure of items from Grisham's semi-truck, as well as Grisham's arrest were all valid and did not violate any of Grisham's rights, his first assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT GUILTY OF A FELONY WHEN APPELLANT WAS NOT PROPERLY ARRAIGNED ON THAT CHARGE.

{¶ 36} Grisham argues in his second assignment of error that he was not properly charged with possession of drugs because the trial court's entry of arraignment listed the charge as possession of drug paraphernalia.

{¶ 37} Before we address the arraignment issue, we note that Grisham did not argue to the trial court that he was improperly arraigned. As such, we will review this matter for plain error only because an appellate court will not consider an error that was not called to the trial court's attention at a time when the trial court could have corrected the error or avoided it altogether. *State v. Encarnacion*, 12th Dist. Butler No. CA2003-09-225, 2004-Ohio-7043, ¶ 7.

{¶ 38} Pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146, CA2013-08-147, 2014-Ohio-2472. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 30.

{¶ 39} The record indicates, as Grisham alleges, that the trial court's arraignment entry mistakenly lists the charges as having weapons under disability and possession of drug

paraphernalia. However, there is nothing else in the record that indicates that Grisham actually proceeded believing that he was charged with, or was pleading no contest to, possession of drug paraphernalia. The same arraignment entry specifically states that Grisham had been "served with a copy of the Indictment." The indictment clearly lists that the second charge against Grisham was "POSSESSION OF DRUGS" in violation of R.C. 2925.11(A). (Emphasis in original.)

{¶ 40} The record also demonstrates that the two charges listed in Grisham's plea form were having weapons under disability and possession of drugs, for which the possible prison term and fine were listed clearly. The transcript of the plea hearing also indicates that Grisham entered his plea to the charge of possession of drugs, and agreed with the state's recitation of the facts in regard to that charge. At no time throughout the proceedings does the record indicate that Grisham proceeded under the belief that he was charged with possession of drug paraphernalia rather than possession of drugs. As such, Grisham has failed to demonstrate that he was prejudiced by the error in the arraignment entry, or that the results of his plea would have been any different had the arraignment entry properly noted possession of drugs instead of possession of drug paraphernalia. As such, Grisham's second assignment of error is overruled.

{¶ 41} Assignment of Error No. 3:

{¶ 42} THE TRIAL COURT ERRED BY NOT BEING REASONABLE IN ITS SENTENCING OF THE APPELLANT BY CONSIDERING ALL SENTENCING FACTORS.

{¶ 43} Grisham argues in this final assignment of error that the trial court erred in giving him a maximum sentence of three years for the having weapons under disability charge.

{¶ 44} "The standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶

6, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "the appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." However, as explicitly stated in R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."

{¶ 45} Instead, an appellate court may take any action authorized under R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant," or (2) "[t]hat the sentence is otherwise contrary to law." A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, and sentences appellant within the permissible statutory range. *Crawford* at ¶ 9; *State v. Elliott*, 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

{¶ 46} After reviewing the record, the trial court's sentence is not clearly and convincingly contrary to law. The trial court stated at the sentencing hearing that it had considered the requisite statutory factors, and also expressly stated in its entry that it had considered the purposes and principles of sentencing according to R.C. 2929.11 and had balanced the seriousness and recidivism factors within R.C. 2929.12.

{¶ 47} The trial court reiterated the facts that Grisham was a convicted felon, yet possessed three loaded firearms in his semi-truck, as well as a controlled substance for which he did not have a prescription. While the trial court also noted the disturbing circumstances surrounding the events that led to the police discovery of the weapons, the trial court expressly noted that it was "not permitted" to hold such circumstances against

Grisham when he had not been convicted of any child-related offense.  The record does not indicate that the trial court increased its sentence because of those circumstances, or based the sentence on any crime except those for which Grisham had been charged and convicted.

{¶ 48} The trial court sentenced Grisham to three years for the having weapons under disability conviction, a third-degree felony, and nine months for the possession of drugs conviction, a fifth-degree felony.  According to R.C. 2929.14(3)(b), the maximum sentence for a third-degree felony is three years, and the maximum sentence for a fifth-degree felony is one year.  Therefore, the sentences were within the statutory range.

{¶ 49} Having considered the purposes and principles of sentencing, and sentencing Grisham within the statutory range for his offenses, the trial court's sentence was not clearly and convincingly contrary to law.  As such, Grisham's third assignment of error is overruled.

{¶ 50} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.